# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Hussey Copper Corp.,[1] | ) | Case No. 11-13010 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Hussey Copper Ltd., | ) | Case No. 11-13012 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| OAP Real Estate, LLC, | ) | Case No. 11-13013 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Cougar Metals, Inc., | ) | Case No. 11-13014 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Orbie Trading, L.P., | ) | Case No. 11-13015 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Hussey Exports Ltd., | ) | Case No. 11-13016 (BLS) |
| | ) | |
| Debtor. | ) | Joint Administration Requested |

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Hussey Copper Corp. (9993); Hussey Copper Ltd. (9994); OAP Real Estate, LLC (1298); Cougar Metals, Inc. (1674); Orbie Trading, L.P. (4969); and Hussey Exports Ltd. (8997). The Debtors' address is 100 Washington Street, Leetsdale, Pennsylvania 15056.

## APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF DONLIN RECANO & COMPANY, INC. AS NOTICE, CLAIMS AND BALLOTING AGENT TO THE DEBTORS

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this application (the "Application") pursuant to Section 156(c) of title 28 of the United States Code (the "U.S. Code"), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for the entry of an order, substantially in the form attached hereto, authorizing the Debtors to employ and retain Donlin Recano & Company, Inc. ("DRC") as notice, claims and balloting agent to the Debtors and for the Office of the Clerk for the United States Bankruptcy Court for the District of Delaware in connection with these chapter 11 cases. Pursuant to a Standard Claims Administration and Noticing Agreement by and between DRC and the Debtors, a copy of which is attached hereto as **Exhibit ""A"** and incorporated herein. In support of this Application, the Debtors rely on the Affidavit of Colleen McCormick, Chief Operating Officer of DRC (the "McCormick Affidavit"), a copy of which is attached hereto as **Exhibit "B"** and incorporated herein. In further support of this Application, the Debtors respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are Section 156(c) of title 28 of the U.S. Code, Rule 2002(f) of the Bankruptcy Rules and Rule 2002-1(f) of the Local Rules.

**Background**

3.  On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

4.  Together with its affiliated Debtors, Hussey Copper Ltd. ("Hussey") is one of the leading manufacturers of copper products in the United States. Among other things, it offers a wide range of value-added copper products and copper-nickel products including sheet, strip, plate and bar, certain alloys, architectural products, tape/fin (used in power cable and heat exchanger products), fabricated products and gaskets. Founded in 1848, Hussey has one manufacturing facility in Leetsdale, Pennsylvania (near Pittsburgh) and two facilities in Eminence, Kentucky. Hussey employs approximately 536 full-time employees.

5.  Since late 2008, the overall economic downturn has had an adverse impact on Hussey. As a result of this economic downturn, and due to related fluctuations in the price of copper, Hussey has faced significant economic challenges. Annual revenue for the Debtors, on a consolidated basis, was approximately $453.6 million in the year ending December 31, 2008, approximately $308.4 million in the year ending December 31, 2009 and approximately $381.9 million in the year ending December 31, 2010. Net income for the last three years was as follows:

| | |
|---|---|
| 2008 : | $3.1 million |
| 2009 : | $1.1 million |
| 2010 : | ($3.0 million) |

6. Hussey is a party to a Revolving Credit, Term Loan and Security Agreement dated as of January 20, 2006 (as amended, the "Credit Facility") with a group of lenders comprised of PNC Bank, National Association, successor to National City Bank and National City Business Credit, Inc. ("PNC"), Wells Fargo Capital Finance, LLC and Bank of America, N.A. (collectively with PNC, the "Bank Group"). In addition to being a member of the Bank Group, PNC serves as issuer and agent for the Bank Group with respect to the Credit Facility.

7. Hussey is the borrower under the Credit Facility. Debtors OAP Real Estate, LLC, Hussey Exports Ltd., Cougar Metals, Inc. and Orbie Trading, L.P. are guarantors (collectively, the "Guarantors").

8. The obligations to the Bank Group under the Credit Facility are secured by liens on substantially all of Hussey's assets.

9. As a result of the occurrence of certain events of default under the Credit Facility related to Hussey's failure to repay the amounts due thereunder as of the maturity date (extended through March 31, 2011), on April 13, 2011 the parties entered into a forbearance agreement, and thereafter a series of amendments to such forbearance agreement. The most recent forbearance agreement amendment, dated September 19, 2011, expired on September 20, 2011. Under the terms of the forbearance agreement, the Bank Group agreed to forbear from exercising its rights and remedies with respect to existing defaults under the Credit Facility, pursuant to certain terms and conditions, including a reduction of the amount of maximum borrowing available and the requirement that Hussey engage an investment banker to market substantially all of its assets for sale. To that end, Hussey engaged SSG Capital Advisors, LLC ("SSG") as its exclusive investment banker.

10. In the months leading up to the filing of the Debtors' bankruptcy petitions, the Debtors concurrently pursued two alternative tracks: (a) a sale of substantially all of their assets, with the assistance of SSG, and (b) the satisfaction of the amounts due under the Credit Facility (which, as of the Petition Date, are approximately $38,170,958.24 principal plus accrued interest) through a refinancing, with the assistance of Huron Consulting Services, LLC. Although the Debtors diligently sought to effectuate a refinancing, it could not be achieved. As a result, the Debtors concluded that the sale of substantially all of their assets, subject to a competitive bidding process, was the best option to maximize value for all creditor constituencies. The Debtors accordingly entered into an Asset Purchase Agreement with KHC Acquisition, LLC prior to the filing of the petitions which, subject to Court approval, will serve as the stalking horse bidder in a competitive bidding process before this Court.

11. In addition to the above-referenced amount owed under the Credit Facility, Hussey is a party to a certain subordinated loan agreement dated as of February 3, 2003 with Square D Company, now known as Schneider Electric USA, Inc. (as amended on January 20, 2006, the "Schneider Agreement") in the original principal amount of $5,000,000. The Schneider Loan Agreement is secured by a second lien on Hussey's senior assets and is subject to an Intercreditor Agreement with the Bank Group. The obligations owing under the Schneider Loan Agreement are guaranteed (subject to certain limitations) by OAP Real Estate, LLC, one of the Debtors herein. As of the Petition Date, the amount owing under the Schneider Loan Agreement was approximately $2,400,000. The Debtors also have approximately $28 million of trade debt, which is owed primarily to suppliers of copper and other metals to Hussey.

12. Additional information regarding Hussey and its affiliated Debtors, and the background to the Debtors' bankruptcy filing, is set forth in the Declaration of Dalton T.

Edgecomb in Support of First Day Motions for Relief filed substantially contemporaneously herewith and incorporated herein.

**Relief Requested**

13. By this Application, the Debtors seek to retain and employ DRC as notice, claims and balloting agent, subject to that certain Standard Claims Administration and Noticing Agreement by and between DRC and the Debtors (such agreement together with all amendments, modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the "Donlin, Recano Agreement"), attached hereto as **Exhibit "A"**.

**DRC's Qualifications**

14. DRC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of chapter 11 cases. Indeed, DRC has developed efficient and cost-effective methods to handle properly the voluminous mailings associated with the noticing, claims processing and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders and all parties in interest. Further, DRC will work with the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Rules and the provisions of any orders entered by this Court.

15. DRC has substantial experience in matters of this size and complexity and has acted as the official notice, claims and solicitation agent in many large bankruptcy cases. See, e.g., In re Lower Bucks Hospital, et al., Case No. 10-10239 (ELF) (Bankr. E.D. Pa. 2010); In re Butler Services International, Inc., et al, Case No. 09-11914 (KJC) (Bankr. D. Del. 2009); In re WBE, LLC, Case No. 09-10649 (MFW) (Bankr. D. Del. 2009); In re Plastech Engineered

Products, Inc., Case No. 08-42417 (PJS) (Bankr. E.D. Mich. 2008); In re Quebecor World (USA) Inc., et al, Case No. 08-10152 (JMP) (Bankr. S.D.N.Y. 2008); In re Hancock Fabrics, Inc., et al, Case No. 07-10353 (BLS) (Bankr. D. Del. 2007); In re M. Fabrikant & Sons, Inc., et al., Case No. 06-12737 (SMB) (Bankr. S.D.N.Y. 2006); In re New York Westchester Square Medical Center, Case No. 06-13050 (SMB) (Bankr. S.D.N.Y. 2006); and In re US Airways, Inc., Case No. 04-13819 (SSM) (Bankr. E.D.Va. 2004).

### Services to be Provided

16. Specifically, as set forth in the Donlin, Recano Agreement, the Debtors seek to engage DRC to provide certain noticing, claims processing and balloting administration services including, without limitation:

(a) Noticing. Preparing and serving a variety of documents on behalf of the Debtors in these Chapter 11 Cases, including:

   i. notice of the commencement of the Debtors' Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

   ii. notice of any claims bar date;

   iii. motions, applications and other requests for relief and related documents;

   iv. objections, responses and replies with respect to requests for relief;

   v. hearing agendas;

   vi. objections to claims;

   vii. any disclosure statements, chapter 11 plans and all documents related thereto; and

   viii. all notices of the filing of the documents listed above, hearings and such other miscellaneous notices as the Debtors or the Court may deem necessary or appropriate for orderly administration of these Chapter 11 Cases.

(b) Claims Administration.

i.     maintaining an official claims register in the Debtors' Chapter 11 Cases by docketing all proofs of claim and proofs of interest in a database;[2]

ii.     maintaining copies of all proofs of claim and proofs of interest filed in these Chapter 11 Cases;

iii.     updating the official claims registers in accordance with Court orders;

iv.     implementing necessary security measures to ensure the completeness and integrity of the claims registers;

v.     transmitting to the Clerk's Office a copy of the claims registers as requested;

vi.     maintaining an up-to-date mailing list for all entities that have filed proofs of claim or proofs of interest and make such list available upon request to the Clerk's Office or any party in interest;

vii.     providing access to the public for examination of copies of the proofs of claim and proofs of interest filed in these Chapter 11 Cases;

viii.     recording all transfers of claims pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and, if directed to do so by the Court, provide notice of such transfers as required by Bankruptcy Rule 3001(e); and

ix.     establishing a case website with case information, including key dates, service lists and free access to the case docket within three days of docketing.

(c)     Balloting Services. Acting as balloting agent, which may include some or all of the following services:

i.     printing ballots and coordinating the mailing of solicitation packages (i.e., ballots, disclosure statement and chapter 11 plan) to all voting and non-voting parties and providing a certificate or affidavit of service with respect thereto;

---

[2]     The database will include: (a) the name and address of the claimant or interest holder and any agent thereof, if appropriate; (b) the date the proof of claim or proof of interest was received by DRC or the Court; (c) the claim number assigned to the proof of claim or proof of interest; and (d) the asserted amount and classification of the claim.

ii.  establishing a toll-free "800" number to receive and answer questions regarding voting with respect to any chapter 11 plan;

iii. receiving ballots at a post office box, inspecting ballots for conformity to voting procedures, date stamping and numbering ballots consecutively and tabulating and certifying the results; and

iv. preparing voting reports by plan class, creditor or shareholder and amount for review and approval by the Debtors and their counsel.

17. In addition to the foregoing services, DRC will provide such other noticing, claims processing, balloting and related administrative services as the Debtors or Clerk's Office may request from time to time, including but not limited to, such functions related to: (1) the Debtors' schedules, statements of financial affairs and master creditor lists, and any amendments thereto; and (2) the processing and reconciliation of claims. The Donlin, Recano Agreement also contains standard indemnification language with respect to DRC's services. Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth therein.

**Professional Compensation**

18. The fees to be charged by DRC in connection with these Chapter 11 Cases are set forth in the Donlin, Recano Agreement. The Debtors respectfully submit that DRC's rates for its services in connection with the notice, claims processing and balloting services are competitive and comparable to the rates charged by their competitors for similar services.

19. Furthermore, the Debtors respectfully submit that the fees and expenses incurred by DRC are administrative in nature and, therefore, should not be subject to the standard fee application procedures for professionals. Specifically, the Debtors request authorization to compensate DRC on a monthly basis, in accordance with the terms and conditions set forth in the Donlin, Recano Agreement, upon DRC's submission to the Debtors of monthly invoices summarizing in reasonable detail the services rendered and expenses incurred in connection with

services provided by DRC to the Debtors. Prior to the filing of the cases, the Debtors paid DRC a retainer of $25,000.

20. In the event these cases are converted to cases under Chapter 7 of the Bankruptcy Code, the Debtors request that DRC continue to be paid for its services until the claims filed in these cases have been completely processed, and that if claims agent representation is necessary in the converted Chapter 7 cases, DRC would continue to be paid in accordance with Section 156(c) of title 28 of the U.S. Code.

### DRC's Disinterestedness

21. Although the Debtors do not propose to retain DRC under Section 327 of the Bankruptcy Code, DRC has nonetheless conducted a conflicts analysis and, to the best of its knowledge and except to the extent disclosed in the McCormick Affidavit, DRC neither holds nor represents an interest adverse to the Debtors' estates nor has a connection to the Debtors, their creditors or their related parties. Should DRC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, DRC will use reasonable efforts to file promptly a supplemental affidavit.

### Basis for Relief

22. Section 156(c) of the U.S. Code, which governs the staffing and expenses of the Bankruptcy Court, authorizes the Court to use facilities other than the Clerk's Office for administration of bankruptcy cases:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

23. In addition, Local Rule 2002-1(f) provides, in relevant part, as follows:

<u>Notice and Claims Clerk.</u> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall perform the below functions.

  i. Serve the following notices: (a) 341 Notice (Notice of Commencement of Case); (b) Notice of Claims Bar Date in chapter 11 cases; (c) Objections to Claims and Transfers of Claims; (d) Notice of Hearing on confirmation of Plan/Disclosure Statement; (e) Notice of Hearing on motions filed by United States Trustee; and (f) Notice of Transfer of Claim;

  ii. Within seven (7) days of mailing, file with the Court, a copy of the notice served with a Certificate of Service attached, indicating the name and complete address of each party served;

  iii. Maintain copies of all proofs of claims and proofs of interest filed in the case;

  iv. Maintain the official claims register and record all Transfers of Claims and make changes to the creditor matrix after the objection period has expired. The claims clerk shall also record any order entered by the Court which may affect the claim by making a notation on the claims register and monitor the Court's docket for any claims related pleading filed and make necessary notations on the claims register. No claim or claim information should be deleted for any reason;

  v. Maintain a separate claims register for each debtor in jointly administered cases;

  vi. File a quarterly updated claims register with the Court in alphabetical and numerical order. If there has been no claims activity, the claims clerk may file a Certification of No Claim Activity;

  vii. Maintain an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or interest and/or request for notices in the case and provide such list to the Court or any interested party upon request (within forth-eight (48) hours);

> viii. Allow public access to claims and the claims register at no charge; and
>
> ix. Within fourteen (14) days of entry of an Order converting a case or within thirty (30) days or entry of a Final Decree, forward all claims and updated claims register to the Court, along with an updated mailing list. The claims register and mailing list should be provided in both paper and on disc and in alphabetical and numerical order. The mailing list disc should be in .txt format.

Del. Bankr. L.R. 2002-1(f).

24. Accordingly, section 156(c) of the U.S. Code empowers the Court to utilize outside agents and facilities for notice and claims purposes, provided the Debtors' estates pay the cost of such services. Additionally, Local Rule 2002-1(f) requires that a debtor in a case with over 200 creditors (such as these Chapter 11 Cases) file a motion to retain a claims agent on the first day of the case or within seven days thereafter. For all of the foregoing reasons, the Debtors believe that the retention of DRC as the notice, claims, and balloting agent in these Chapter 11 Cases is in the best interests of the Debtors, their estates, and creditors.

25. Courts in this jurisdiction and others have approved relief similar to the relief requested in this Application. See, e.g., In re SSI Group Holding Corp., Case No. 11-12917 (MFW) (Bankr. D. Del. Sept. 15, 2011); In re DSI Holdings, Inc., Case No. 11-11941 (KJC) (Bankr. D. Del. June 28, 2011); In re Perkins & Marie Callender's Inc., Case No. 11-11795 (KG) (Bankr. D. Del. June 14, 2011); In re Universal Building Products, Inc. et al., Case No. 10-12453 (Bankr. D. Del. Aug. 5, 2010; In re The Majestic Star Casino, LLC, Case No. 09-14136 (Bankr. D. Del. Nov. 24, 2009); In re Taylor-Wharton Int'l, LLC, Case No. 09-14089 (Bankr. D. Del. Nov. 20, 2009); In re Visteon Corp., Case No. 09-11786 (Bankr. D. Del. May 29, 2009); In re Pacific Ethanol Holding Co. LLC, Case No. 09-11713 (Bankr. D. Del. May 19, 2009); In re Crucible Materials Corp., Case No. 09-11582 (Bankr. D. Del. May 7, 2009); In re Stock Bldg. Supply Holdings, LLC, Case No. 09-11554 (Bankr. D. Del. May 7, 2009); In re Norwood

Promotional Products Holdings, Inc., Case No. 09-11547 (Bankr. D. Del. May 7, 2009); In re Filene's Basement (f/k/a) FB Liquidating Estate, Case No. 09-11525 (Bankr. D. Del. May 5, 2009); In re AbitibiBowater Inc., Case No. 09-11296 (Bankr. D. Del. April 17, 2009); In re BT Holding III, LLC (f/k/a BT Tires Group Holdings, LLC), Case No. 09-11173 (Bankr. D. Del. April 3, 2009); In re Nova Holding Clinton County, LLC, Case No. 09-11081 (Bankr. D. Del. April 1, 2009); In re Drug Fair Group, Inc., Case No. 09-10897 (Bankr. D. Del. March 20, 2009); In re Masonite Corp., et al., Case No. 09- 10844 (Bankr. D. Del. March 16, 2009); In re Muzak Holdings LLC, Case No. 09-10422 (Bankr. D. Del. Feb. 12, 2009); In re Tropicana Entm't. LLC, Case No. 08 10856 (Bankr. D. Del. May 6, 2008); In re Leiner Health Prods. Inc., Case No. 08 10446 (Bankr. D. Del. March 12, 2008).

## Notice

26. The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Office of the United States Attorney for the District of Delaware; (c) the Offices of the United States Attorney for the Commonwealth of Pennsylvania; (d) the Offices of the United States Attorney for the Commonwealth of Kentucky; (e) the Office of the Attorney General for the State of Delaware; (f) the Office of the Attorney General for the Commonwealth of Pennsylvania; (g) the Office of the Attorney General for the Commonwealth of Kentucky; (h) the State of Delaware Department of Labor and Industry; (i) the Commonwealth of Pennsylvania Department of Labor and Industry; (j) the Commonwealth of Kentucky Department of Labor and Industry; (k) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed by the Debtors pursuant to Bankruptcy Rule 1007(d); (l) counsel to PNC Bank, National Association, as lender, issuer and agent for the Debtors' pre-petition and post-petition secured lenders; (m) counsel to

Schneider Electric USA, Inc.; (n) the Internal Revenue Service; (o) counsel to the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (United Steelworkers, AFL-CIO); (p) the Pension Benefit Guaranty Corporation; and (q) counsel to KHC Acquisition, LLC. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

27. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the McCormick Affidavit, the Debtors respectfully request: (i) the entry of an order, substantially in the form attached, (a) authorizing the Debtors to employ and retain DRC as notice, claims and balloting agent in

[the remainder of this page has been left intentionally blank]

connection with these Chapter 11 Cases, (b) approving the terms of the Donlin, Recano Agreement, and (ii) granting such other and further relief as is just and proper.

Dated: September 26, 2011

HUSSEY COPPER CORPORATION

By: /s/ Dalton T. Edgecomb
Name: Dalton T. Edgecomb
Title: Chief Restructuring Officer