# Exhibit A

Standard Claims Administration
and Noticing Agreement

## Donlin, Recano & Company, Inc.

## STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

### TERMS AND CONDITIONS

Donlin, Recano & Company, Inc. (hereinafter called "DRC") agrees to provide Hussey Copper Ltd., *et al.*, including but not limited to any and all bankruptcy cases filed by any affiliate of Hussey Copper Ltd., *et al.* (hereinafter called the "Client") and Client agrees to purchase services upon the terms and conditions and in accordance with "Schedule A", attached hereto, and other provisions stated herein, including but not limited to services to be rendered by DRC in connection with solicitation, calculation and tabulation of votes under any plan of reorganization or liquidation (the "Voting Services"). The fees for Voting Services are to be mutually agreed upon by DRC and Client under a separate fee addendum to this agreement at the point in time that Client requests such Voting Services. Client agrees and understands that none of the services constitute legal advice.

1. **CHARGES**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to Chapter 11 of title 11 of the United States Code, the parties intend that all fees and expenses due under this agreement shall be paid as administrative expenses of the Clients' chapter 11 estate(s). In the event the Clients' bankruptcy case(s) are converted to a Chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a Chapter 11 administrative expense claim. In the event DRC has performed pre-petition services and/or incurred pre-petition costs which have not otherwise been paid in full at the commencement of the bankruptcy case(s), Client covenants and agrees to file (or cause the filing of) with the court, at the option of DRC, either (i) a motion to assume this Agreement and cure any defaults (in the event DRC is retained pursuant to 28 U.S.C. §156(c)), or (ii) file a request for the payment of all such unpaid and outstanding fees and costs without prejudice to DRC's retention hereunder.

2. **TRANSPORTATION OF DATA**: Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which

9/7/2011



www.donlinrecano.com

DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**3. RETAINER & INVOICES:** At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $25,000.00. DRC may apply the Retainer to the payment of the final invoice from DRC for this engagement or to any other invoice in its absolute discretion. Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client. DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full. DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer. Client shall pay the charges set forth in Schedule A, attached hereto. DRC shall invoice the Client monthly for all services rendered during the preceding month. Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing. Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC. Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client. The undisputed portion of the invoice will remain due and payable. Late charges shall not accrue on any amounts in dispute. Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses. The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach"). Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.

**4. STORAGE:** Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

**5. E-MAIL COMMUNICATIONS:** DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.



9/7/2011

Donlin, Recano & Company, Inc.

**6. SUPPLIES**: All supplies shall be furnished at Client's expense.

**7. WARRANTY AND RELIANCE**: Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC (including all information for preparation of the Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"). All Schedules and Statements filed on behalf of, or by, the Client are reviewed and ultimately approved by the Client, and DRC bears no responsibility for the accuracy or contents therein. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it. Client agrees that the foregoing warranty is in lieu of all other warranties, express or implied, including but not limited to any implied warranty of merchantability, fitness or adequacy for any particular purpose or use, quality, productiveness or capacity.

**8. TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 3 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 3 and 10 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**9. TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**10. INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any

9/7/2011



www.donlinrecano.com

liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities. Notwithstanding any provision in the Application or this Agreement to the contrary, the Client has no obligation to indemnify DRC, or provide contribution or reimbursement to DRC, for any claim or expense that is either (a) judicially determined (the determination having become final) to have arisen from DRC's gross negligence or willful misconduct, (b) a result of any breach of this Agreement by DRC, or (c) settled prior to a judicial determination as to DRC's gross negligence or willful misconduct, but determined by the Bankruptcy Court, after notice and a hearing, to be a claim or expense for which DRC should not receive indemnity, contribution or reimbursement under the terms of the Application and this paragraph of this Agreement. If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal), and (b) the entry of an order closing this chapter 11 case, DRC believes that it is entitled to the payment of any amounts by the Client(s) on account of the Clients' indemnification, contribution and/or reimbursement obligations under this paragraph of this Agreement, including without limitation the advancement of defense costs, DRC must file an application therefore in the Bankruptcy Court, and the Clients(s) may not pay any such amounts to DRC before entry of an order approving the payment.

**11. CONFIDENTIALITY:** Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information.

**12. OWNERSHIP OF PROGRAMS:** Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**13. SYSTEMS IMPROVEMENTS:** DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**14. UNUSUAL MEASURES:** Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

**15. JURISDICTION.** This Agreement is subject to the approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.



9/7/2011

**16. FORCE MAJEURE.** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**17. NOTICE.** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to DRC, to Donlin, Recano & Company, Inc., 419 Park Avenue South, Suite 1206, New York, New York 10016, Attention: Louis A. Recano; if to the Client, to Saul Ewing LLP, 1500 Market Street, 38th Floor, Philadelphia, PA, 19102, Attention: Jeffrey C. Hampton, Esq.

**18. GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**19. SEVERABILITY.** All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**20. ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

*[remainder of page intentionally blank]*



Donlin, Recano & Company, Inc.

**21. GENERAL:** The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client. Client will not employ any DRC employee within two (2) years from the termination of this Agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy. The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC. If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
419 Park Avenue South
New York, New York 10016

By: _COLLEEN McCORMICK_

Signature: _[signature]_

Title: _COO_

Date: _9/7/11_


Accepted and Approved:

Hussey Copper Ltd., *et al.*

By: _____

Signature: _____

Title: _____

Date: _____

This Agreement is subject to the terms and conditions set forth herein. Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

9/7/2011



www.donlinrecano.com

Donlin, Recano & Company, Inc.

21. **GENERAL**: The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client. Client will not employ any DRC employee within two (2) years from the termination of this Agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy. The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC. If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
419 Park Avenue South
New York, New York 10016

By: _COLLEEN MC CORMICK_

Signature: _[signature]_

Title: _COO_

Date: _9/7/11_

Accepted and Approved:

Hussey Copper Ltd., *et al.*

By: _____

Signature: _Roy D. All_

Title: _PRESIDENT_

Date: _____

This Agreement is subject to the terms and conditions set forth herein. Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

9/7/2011

DRC | Donlin Recano

www.donlinrecano.com