# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Hussey Copper Corp.,[1] | ) | Case No. 11-13010 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Hussey Copper Ltd., | ) | Case No. 11-13012 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| OAP Real Estate, LLC, | ) | Case No. 11-13013 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Cougar Metals, Inc., | ) | Case No. 11-13014 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Orbie Trading, L.P., | ) | Case No. 11-13015 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Hussey Exports Ltd., | ) | Case No. 11-13016 (BLS) |
| | ) | |
| Debtor. | ) | Joint Administration Requested |
| | ) | **Re: Docket No. _____** |

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Hussey Copper Corp. (9993); Hussey Copper Ltd. (9994); OAP Real Estate, LLC (1298); Cougar Metals, Inc. (1674); Orbie Trading, L.P. (4969); and Hussey Exports Ltd. (8997). The Debtors' address is 100 Washington Street, Leetsdale, Pennsylvania 15056.

**ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING ON AN INTERIM BASIS AND (B) UTILIZE CASH COLLATERAL OF PRE-PETITION SECURED PARTIES ON AN INTERIM BASIS, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) GRANTING RELATED RELIEF, PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363(C), (D) &(E), 364(C), 364(D)(1), 364(E) AND 507(B), AND (V) SCHEDULING A FINAL HEARING AUTHORIZING FINANCING ON A FINAL BASIS PURSUANT TO BANKRUPTCY RULE 4001**

Upon the motion (the "**Motion**"), dated September 27, 2011, of Hussey Copper Ltd. ("**Hussey**" also referred to as "**Borrower**"), and its affiliated debtors ("**Affiliate Debtors**", together with Hussey, collectively the "**Debtors**" and each individually the "**Debtor**") on behalf of the debtor parties to the DIP Financing Documents (as defined below), each as a Debtor and Debtor-in-Possession in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

(1) authorization and approval for the Borrower to obtain post-petition loans, advances and other financial accommodations (the "**Post-Petition Financing**") on an interim basis for a period through and including the date of the Final Hearing (as defined below) from PNC Bank, National Association, in its capacity as agent (in such capacity, the "**DIP Agent**") for itself and the other financial institutions from time to time party to the DIP Credit Agreement (as defined below) as lenders (collectively, the "**DIP Lenders**"), under or in connection with the debtor-in-possession revolving credit facility (the "**DIP Facility**") in an interim aggregate amount up to $35,000,000 and on a final basis in an aggregate amount up to $50,000,000 and otherwise in accordance with this Interim Order, secured by first priority perfected security interests in and liens, senior and above all other liens upon all of the DIP Collateral (as defined below) pursuant to Sections 364(c)(2) and 364(c)(3) and 364(d) of the Bankruptcy Code and as set forth below;

(2) authorization for the Borrower and OAP Real Estate, LLC ("**OAP**"), Cougar Metals, Inc. ("**Cougar**"), Orbie Trading, L.P. ("**Orbie**") and Hussey Exports Ltd. ("**Exports**," together with OAP, Cougar and Orbie, collectively the "**Guarantors**") to enter into, (i) that certain Guaranty Agreement (the "**Guaranty Agreement**") in favor of DIP Agent,

for the benefit of DIP Lenders, pursuant to which each Guarantor guarantees all Obligations[2] arising under the DIP Credit Agreement (as defined below), (ii) that certain Guaranty Security Agreement in favor of DIP Agent, for the benefit of DIP Lenders, pursuant to which each Guarantor pledges and grants a Lien on all of its assets (the "**Guaranty Security Agreement**"), (iii) those certain Mortgage Modifications in favor of DIP Agent, for the benefit of DIP Lenders, pursuant to which Hussey and OAP Real Estate, LLC pledge and grant a Lien on certain real property and fixtures located in Leetsdale, Pennsylvania and Eminence, Kentucky (collectively, the "**Mortgage Modifications**"), and (iv) the Debtor-In-Possession Financing Agreement with the DIP Agent and the DIP Lenders, substantially in the form attached hereto as **Exhibit 1** (the "**DIP Credit Agreement**"), each of which shall reflect in all material respects the terms and conditions set forth in this Order (the Guaranty Agreement, the Guaranty Security Agreement, the Mortgage Modifications, the DIP Credit Agreement, this Interim Order and the Final Order (as defined below) together with all other agreements, documents and instruments to be executed or delivered in connection therewith, collectively, the "**DIP Financing Documents**"), and to borrow upon entry of this Interim Order, up to an aggregate principal amount not to exceed $35,000,000 and pursuant to the Final Order up to an aggregate principal amount not to exceed $50,000,000 to be used in part for working capital and upon entry of the Final Order to refinance, in whole or in part at the DIP Agent's option, the outstanding principal balance of the revolving loans and obligations under the Revolving Credit, Term Loan and Security Agreement dated as of January 20, 2006 (as amended, supplemented, extended or otherwise modified from time to time, the "**Pre-Petition Revolving Credit Agreement**"), by and among Hussey Cooper Ltd. (the "**Pre-Petition Borrower**") and PNC Bank, National Association as Agent, successor to National City Business Credit, Inc. (the "**Pre-Petition Agent**") and the financial institutions party thereto from time to time (collectively, the "**Pre-Petition Lenders**"), and which shall indefeasibly satisfy in full the outstanding obligations under the Pre-Petition Financing Documents (as defined below). The Pre-Petition Credit Agreement and all other agreements, documents and instruments executed or delivered with, to, or in favor of the Pre-Petition Agent and the Pre-Petition Lenders, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection with the Pre-Petition Credit Agreement or related thereto, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated or replaced at any time prior to the Petition Date, are collectively referred to herein as the "**Pre-Petition Financing Documents**".

(3)     the grant to the DIP Agent, for the benefit of itself and the other DIP Lenders, of superpriority administrative claim status pursuant to Sections 364(c)(1) and 507(b) of the Bankruptcy Code in accordance with the terms of this Order;

(4)     authorizing the Debtors' use of "cash collateral" (the "**Cash Collateral**") which term shall include, without limitation, all cash and cash equivalents of the Debtors, whenever or wherever acquired, and the proceeds of all collateral pledged to the Secured Parties (defined below) and Square D (as defined below), as contemplated by section 363 of the Bankruptcy Code in accordance with the terms set forth herein;

---

[2]     Capitalized terms used but not otherwise defined in this Order shall have the respective meanings ascribed thereto in the DIP Financing Agreement.

(5) granting adequate protection to each Pre-Petition Lender and Issuer (as defined in the Pre-Petition Credit Agreement) (the "**Pre-Petition Issuer**," together with the Pre-Petition Agent and Pre-Petition Lenders, the "**Pre-Petition Secured Parties**," together with the DIP Agent and DIP Lenders, the "**Secured Parties**") under and in connection with the Pre-Petition Financing Documents in accordance with the terms set forth herein;

(6) granting adequate protection to Schneider Electric USA, Inc. f/k/a Square D Company ("**Square D**") in connection with that certain amended and restated promissory note dated January 20, 2006 (the "**Square D Loan Agreement**") secured by that certain amended and restated security agreement date January 20, 2006, pursuant to which Hussey obtain a subordinated loan in the original principal amount of $5,000,000 (the "**Subordinated Loan**") to the extent that Square D holds valid, perfected, enforceable and unavoidable liens as of the Petition Date and solely to the extent that Square D is entitled to same pursuant to and in accordance with the Intercreditor Agreement;

(7) modification of the automatic stay to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h); and

(8) the setting of a final hearing on the Motion (the "**Final Hearing**") for entry of an order authorizing the financing and use of cash collateral on a final basis (the "**Final Order**").

Notice of the Motion, the relief requested therein, and the Interim Hearing (as defined below) (the "**Notice**") having been served by the Debtors in accordance with Rule 4001(c) on: (i) the DIP Agent and the DIP Lenders and the Pre-Petition Secured Parties; (ii) the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (iii) the holders of the twenty (20) largest unsecured claims against the Debtors' estates; (iv) Square D, (v) Roy D. Allen, (vi) all parties known to the Debtors who hold any liens or security interest in the Debtors' assets who have filed UCC-1 financing statements against the Debtors, or who, to the Debtors' knowledge, have asserted any liens on any of the Debtors' assets; (vii) all landlords and warehouseman of the Debtors; (viii) all guarantors of the Pre-Petition Obligations; (ix) the Internal Revenue Service and all taxing authorities of states in which the Borrower are doing business; (x) PBGC, the United Steelworkers International, the Environmental Protection Agency; (xi) all creditors

known to the Debtors to be holding a judgment and (xii) certain other parties identified in the certificates of service filed with the Court (collectively, the "**Noticed Parties**").

The initial hearing on the Motion having been held by this Court on September __, 2011 (the "**Interim Hearing**").

Upon the record made by the Debtors at the Interim Hearing, including the Motion, and the filings and pleadings in the Cases, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]:

      A.     Petition. On September 27, 2011 (the "**Petition Date**"), each Debtor filed a voluntary petition (the "**Petition**") under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

      B.     Jurisdiction and Venue. The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.     Notice. Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief granted under this Order complies with Bankruptcy Rule 4001(c).

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052. Any statements of the Court from the bench at the Emergency Interim Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Interim order to the extent non inconsistent herewith.

D.    Debtors' Acknowledgments and Agreements.  Without prejudice to the rights of any other party (but subject to the limitations contained in paragraph 5.1 below), the Debtors admit, stipulate, acknowledge and agree that:

(i)    Pre-Petition Financing Documents.  Prior to the commencement of the Cases, the Pre-Petition Secured Parties made loans, advances and provided other financial accommodations pursuant to the Pre-Petition Financing Documents to the Pre-Petition Borrower.  O-A-P, Cougar, Orbie and Exports (collectively, the "**Pre-Petition Guarantors**") guaranteed the obligations of the Pre-Petition Borrower under the Pre-Petition Revolving Credit Agreement pursuant to those certain Guaranty Agreements executed by each of the Pre-Petition Guarantors.

(ii)    Pre-Petition Obligations Amount.  As of September 27, 2011, the aggregate amount of all Obligations (as defined in the Pre-Petition Revolving Credit Agreement) owing by the Pre-Petition Borrower to the Pre-Petition Secured Parties under and in connection with the Pre-Petition Financing Documents was not less than **$38,170,958.24**, consisting of Revolving Advances outstanding under (and as defined in) the Pre-Petition Revolving Credit Agreement, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto under the Pre-Petition Credit Agreement, (collectively, the "**Pre-Petition Obligations**").  The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Pre-Petition Borrower and Pre-Petition Guarantors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff or

defense of any kind, nature or description which would in any way affect the validity, enforceability and nonavoidability of any of the Pre-Petition Obligations.

(iii) <u>Pre-Petition Collateral</u>. As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Pre-Petition Financing Documents by valid, perfected, enforceable and non-avoidable first priority security interests and liens granted by (a) Hussey to the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, upon the Collateral (as defined in the Pre-Petition Credit Agreement, hereafter the "**Pre-Petition Hussey Collateral**"), subject to the lien in favor of (i) Wells Fargo Financial Leasing, Inc. on specific equipment evidenced by the UCC filing against Hussey filed on June 20, 2007 with the Secretary of State for the Commonwealth of Pennsylvania (the "**Wells Lien**"), (ii) Air Liquide Industrial U.S. L.P. on specific equipment evidenced by the UCC filing against Hussey filed on February 12, 2009 with the Secretary of State for the Commonwealth of Pennsylvania (the "**Air Liquide Lien**"), (iii) Wells Fargo Financial Leasing, Inc. on certain leased equipment evidenced by the UCC filing against Hussey filed on January 27, 2006 with the Secretary of State for the Commonwealth of Pennsylvania (the "**Wells Lease Lien**"), (iv) Citicorp Vendor Finance, Inc. on certain leased equipment evidenced by the UCC filing against Hussey filed on February 27, 2006 with the Secretary of State for the Commonwealth of Pennsylvania (the "**Citicorp Lien**"), (v) VFI-SPV SL VII on certain leased equipment evidenced by the UCC filing against Hussey filed on June 18, 2009 with the Secretary of State for the Commonwealth of Pennsylvania (the "**VFI Lien**") and (vi) Verizon Credit, Inc. on certain leased equipment evidenced by the UCC filing against Hussey filed on May 12, 2010 with the Secretary of State for the Commonwealth of Pennsylvania (the "**Verizon Lien**"), to the extent such liens are valid, perfected and unavoidable liens or security interests existing as of the Petition Date and otherwise senior to the lien of Pre-Petition Lenders in such equipment as of the Petition Date

(collectively, the "Permitted Liens" and each a "**Permitted Lien**"); and (b) Hussey and OAP to the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, upon the Mortgaged Property (as defined in those certain Open-End Fee and Leasehold Mortgage, Fixture Filing and Assignment of Rents and Leases executed by Hussey and OAP in favor of Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties dated January 20, 2006 relating to the premises located in Leetsdale, Pennsylvania and Eminence, Kentucky (as amended, restated, supplemented and modified from time to time, the "**Mortgages**") (hereafter the "**Pre-Petition OAP Collateral**," together with the Pre-Petition Hussey Collateral, the "**Pre-Petition Collateral**"). The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Secured Parties' liens, claims or security interests in the Pre-Petition Collateral.

(iv)     Square D Obligations. Prior to the commencement of the Cases, Hussey obtained the Subordinated Loan from Square D pursuant to the Square D Loan Agreement. Square D asserts that the obligations owing by Hussey to Square D under the Square D Loan Agreement are secured by a second subordinated lien on all of Hussey's assets (the "**Pre-Petition Square D Collateral**"), subject to the Intercreditor Agreement (as defined below). The obligations owing under the Square D Loan Agreement are guaranteed (subject to certain limitations) by OAP. As of the Petition Date, the obligations owing by Debtors under the Square D Loan Agreement is approximately $2,400,000.

(v)     Intercreditor Agreement. Hussey, the Pre-Petition Agent and Square D are parties to that certain Intercreditor Agreement, dated as of January 20, 2006 (as has been amended, restated, supplemented or otherwise modified from time to time, the "**Intercreditor Agreement**"), which governs the respective rights, obligations and priorities of

the Secured Parties and Square D with respect to the matters referred to therein, including, without limitation, the use of Cash Collateral and the DIP Facility. The liens and security interests granted to Square D in the Pre-Petition Square D Collateral are governed by and subject to the Intercreditor Agreement and are junior in all respects to the liens and security interests granted to the Pre-Petition Secured Parties, in the Pre-Petition Collateral and Secured Parties in the DIP Collateral. See Paragraphs 1, 2, 4 and 20.

       E.      <u>Adequate Protection</u>.

       (i)      <u>Adequate Protection Obligations</u>. The Debtors acknowledge and agree that:

a. the Pre-Petition Secured Parties are entitled to adequate protection resulting from the (1) provisions of this Interim Order granting first priority and/or priming liens on the Pre-Petition Collateral to the DIP Agent, for the benefit of the DIP Lenders, with respect to the DIP Facility; (2) use of the Cash Collateral, (3)use, sale, lease, or depreciation or other diminution in value of the Pre-Petition Collateral, and/or (4 the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c) and 364(d)(1) of the Bankruptcy Code; and

b. for the Pre-Petition Square D Collateral in which Square D held valid, perfected, enforceable and unavoidable liens on the Petition Date, Square D is being provided with adequate protection to the extent it is otherwise entitled, resulting from the (1) provisions of this Interim Order granting first priority and/or priming liens on the Pre-Petition Collateral to the DIP Agent, for the benefit of the DIP Lenders, with respect to the DIP Facility; (2) use of the Cash Collateral, (3) use, sale, lease, or depreciation or other diminution in value of the Pre-Petition

608318.1 9/27/11

Collateral, and/or (4) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c) and 364(d)(1) of the Bankruptcy Code;

Which as to (i) a and b (the amount of any such use and diminution being referred to hereafter as the "**Adequate Protection Obligations**").

(ii)　　First Lien/Second Lien Adequate Protection. Pursuant to sections 361, 363 and 507(b), as adequate protection for the Adequate Protection Obligations, the Debtors have agreed to provide the Pre-Petition Secured Parties with the First Lien Adequate Protection, and Square D with the Second Lien Adequate Protection (each as defined below), it being understood that the Second Lien Adequate Protection is being provided solely to the extent it is determined that Square D is entitled thereto.

(iii)　　Necessity for Adequate Protection. The adequate protection and other treatment proposed to be provided by the Debtors pursuant to this Interim Order are consistent with, inter alia, the Intercreditor Agreement, and authorized by the Bankruptcy Code, will minimize disputes and litigation over use of the Cash Collateral, and facilitate the Debtors' ability to continue their business operations because of the need for a DIP Facility.

F.　　Adequate Protection for Financing/Cash Collateral/Non-Impairment. The security interests and liens granted hereunder to (a) the DIP Agent, for the benefit of the DIP Lenders, under section 364(c) and (d) of the Bankruptcy Code, and (b) to the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, under sections 105, 361 and 363 of the Bankruptcy Code, are appropriate because, among other things: (a) the Pre-Petition Secured Parties do not object to the entry of this Interim Order; (b) by virtue of paragraphs 1, 2, 4 and 20 and the other provisions of the Intercreditor Agreement Square D

has consented to the security interests and priming liens granted to the DIP Agent for the use of Cash Collateral for the benefit of the DIP Lenders and the First Lien Adequate Protection pursuant to this Interim Order and the Use of Cash Collateral, and (c) the holders of Permitted Liens, to the extent they are legal, valid, binding, continuing, enforceable and fully perfected, are not being impaired by this Interim Order.

G.    <u>Preliminary Findings Regarding the Postpetition Financing</u>.

(i)    <u>Postpetition Financing</u>.    Borrower and the Guarantors have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, certain loans, advances and other financial accommodations, as more particularly described, and on the terms and conditions set forth, in this Interim Order and the DIP Financing Documents. Notwithstanding the Secured Parties' willingness to extend such financial accommodations, the Pre-Petition Obligations shall be deemed to have been automatically accelerated on the Petition Date as a result of the commencement of the Cases in accordance with the terms of the Pre-Petition Financing Documents.

(ii)    <u>Reserved.</u>

(iii)    <u>Fair and Reasonable</u>. The terms of the DIP Credit Agreement, the DIP Financing Documents and the DIP Facility are fair and reasonable and reflect Borrower' and Guarantors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(iv)    <u>Need for Post-Petition Financing</u>.    The Debtors do not have sufficient available sources of working capital to operate the Borrower's businesses in the ordinary course without the Post-Petition Financing and the ability to use Cash Collateral as described in this Interim Order. The Debtors' ability to maintain business relationships with

their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed Post-Petition Financing and the use of Cash Collateral on the terms set forth in the DIP Financing Documents and this Interim Order is vital to the preservation and maximization of the going concern value of the Debtors' currently operating businesses pending a sale of the assets of the Debtors. Accordingly, the Debtors have an immediate need to obtain authorization to use Cash Collateral for the limited purpose set forth herein and obtain the Post-Petition Financing in order to, among other things, permit the orderly continuation of the operation of their operating businesses, preserve jobs for their employees, maintain vendor support and minimize the disruption of their business operations, manage and preserve the assets of the Debtors' bankruptcy estates (as defined under Section 541 of the Bankruptcy Code, the "**Estates**") in order to maximize the recoveries to creditors of the Estates.

(v)     No Credit Available on More Favorable Terms.     Debtors are unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code, without the grant of liens on all or substantially all of Borrower's and Guarantors' assets, pursuant to Section 364(c) and Section 364(d) of the Bankruptcy Code. Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Agent and the DIP Lenders pursuant to the DIP Financing Documents and this Interim Order.

(vi)     Budget.     The Debtors have prepared and delivered to the DIP Agent and the DIP Lenders the Budget (as defined in the DIP Credit Agreement). A copy of the

Budget is annexed hereto as **Exhibit 2**. The Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby. The Debtors believe in good faith that the Budget is achievable and will allow the Debtors to operate in Chapter 11 without the accrual of unpaid administrative expenses during the term of the Budget. The DIP Agent and the DIP Lenders are relying upon the Debtors' compliance with the Budget in determining to consent to the use of Cash Collateral for the limited purposes expressly set forth herein and to enter into the Post-Petition Financing provided for herein.

(vii)    <u>Business Judgment and Good Faith Pursuant to Section 364(e) and Section 363 (m).</u> The terms of the DIP Financing Documents and this Interim Order are fair, just, reasonable and appropriate under the circumstances, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Based on the record before this Court, it appears (and the Debtors have stipulated) that the Debtors and each of the Secured Parties have negotiated at arms' length and in good faith regarding the terms of the DIP Financing Documents, the DIP Facility and the Debtors' use of Cash Collateral, respectively, all subject to the terms of this Interim Order. Any credit extended under the terms of this Interim Order shall be deemed to have been extended in "good faith" by the Secured Parties as that term is used in Section 364(e) and 363(m) of the Bankruptcy Code.

(viii)    <u>No Objection/Square D Consent.</u> Pre-Petition Secured Parties' have no objection to the DIP Facility and the use of Cash Collateral solely on the terms and conditions set forth in this Interim Order. Square D consented to the terms of financing and use of cash collateral by virtue of the Intercreditor Agreement, *inter alia*, paragraphs 1, 2, 4, & 20. Nothing in this Interim Order, including, without limitation, any of the provisions herein with

respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Pre-Petition Secured Parties are or will be adequately protected with respect to any additional financing, or any non-consensual use of Cash Collateral. The DIP Agent and the DIP Lenders have indicated a willingness to provide the DIP Facility, but solely on the terms and conditions set forth in this Interim Order and in the DIP Financing Documents.

(ix)  No Responsible Person. The Debtors stipulate that in making the decision to finance the Debtors' operations through the DIP Facility, to permit the Debtors to use Cash Collateral for the limited purposes set forth herein, in administering any loans, in approving the Budget, or in taking any actions permitted by this Interim Order or the DIP Financing Documents, none of the DIP Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Lenders or Square D, as applicable, shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person", "owner or operator" or part of any "control group" with respect to any of the Debtors or the management of the Debtors.

(x)  Good Cause.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors and their Estates, as its implementation will, among other things, provide the Borrower with the necessary liquidity to (a) minimize disruption to the Borrower on-going businesses and on-going operations and to permit the Debtors to sell their assets, (b) preserve and maximize the value of the Borrower's Estates, and (c) avoid immediate and irreparable harm to the Borrower, their businesses, their employees and their assets.

(xi)  Immediate Entry. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(c)(2). No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Interim

Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order.  This Order shall be referred to herein as the **"Interim Order."**

1.2    Authorization to Borrow and Use of Loan Proceeds.  The Borrower are hereby authorized and empowered to immediately borrow and obtain Advances (and, at the discretion of the DIP Agent and the DIP Lenders, Letters of Credit) and the Borrower and Guarantors are hereby authorized and empowered to incur indebtedness and obligations owing to the DIP Agent and the DIP Lenders on the terms and subject to the conditions set forth in the DIP Financing Documents and this Interim Order, during the period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in Section 7 of this Interim Order (the **"Interim Financing Period"**) up to the amount of $35,000,000 during such period and up to the maximum amount of $50,000,000 upon entry of the Final Order; in such amounts as may be made available to the Borrower by DIP Lenders in accordance with all of the lending formulae, sublimits, terms and conditions set forth in the DIP Financing Documents.  The Borrower may only use the proceeds of the Advances and any other credit accommodations provided to the Borrower pursuant to the terms and conditions of the DIP Financing Documents and this Interim Order; provided however, that upon entry of the Final

Order, Advances may be used to refinance, in whole or in part, at the DIP Agent's option, the outstanding principal balance of amounts owing under the Pre-Petition Financing Documents.

      1.3    <u>Financing Documents</u>.

      1.3.1    <u>Authorization</u>.    The Borrower and Guarantors are hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Financing Documents, including without limitation, the DIP Credit Agreement, the Guaranty Agreement, the Guaranty Security Agreement and the Mortgage Modifications.

      1.3.2    <u>Approval</u>. The DIP Financing Documents and each term set forth therein are approved to the extent necessary to implement the terms and provisions of this Interim Order. All of such terms, conditions and covenants shall be sufficient and conclusive evidence of the financing arrangements by and among the Borrower and Guarantors, the DIP Agent and the DIP Lenders, and of each Borrower's and Guarantor's assumption and adoption of all of the terms, conditions, and covenants of the DIP Financing Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Obligations, including, without limitation, all principal, interest, commissions, letter of credit fees, servicing fees, unused line fees, the DIP facility fee and other fees and expenses, including, without limitation, all of the DIP Agent's and the DIP Lenders' consultant fees, professional fees, attorney fees and legal expenses, in accordance with and as more fully set forth in the DIP Financing Documents.

      1.3.3    <u>Amendment of DIP Financing Documents</u>. The Debtors, the DIP Agent, and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents, any non-material modification, including, without limitation, up to a twenty percent (20%) increase in the Maximum Loan Amount (as defined to the DIP Credit Agreement), of the DIP Financing Documents without further order of this Court or any other

modification to the DIP Financing Documents; provided however, that notice of any material modification or amendment to the DIP Financing Documents shall be provided to counsel to any Committee and the U.S. Trustee, each of whom shall have three (3) business days from the date of such notice within which to object in writing to such modification or amendment. If any Committee or the U.S. Trustee timely objects to any material modification or amendment to the DIP Financing Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.

      1.4    <u>Payment of Prepetition Debt</u>. The Borrower and Guarantors are authorized to pay the Pre-Petition Obligations to the Pre-Petition Secured Parties in accordance with Sections 1.5 and 1.6 of this Interim Order.

      1.5    <u>Payments and Application of Payments</u>. The Debtors are authorized and directed to make all payments and transfers of Borrower's Estate property to the DIP Agent and the DIP Lenders as provided, permitted and/or required under the DIP Financing Documents, which payments and transfers, subject to Section 5.1 herein, shall not be avoidable or recoverable from the DIP Lenders under Section 547, 548, 550, 553 or any other Section of the Bankruptcy Code, or subject to any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. The DIP Agent and the DIP Lenders shall apply the proceeds of the DIP Collateral (as defined below), and any other amounts or payments received by the DIP Agent in respect of the Pre-Petition Obligations and the Post-Petition Obligations (as defined in the DIP Financing Documents) (collectively, the "**Obligations**") in accordance with the DIP Financing Documents and this Interim Order, in such order and manner determined by the DIP Agent, including, without limitation, applying all payments, proceeds and other amounts either to the Pre-Petition Obligations or to the Post-Petition Obligations in the DIP Agent's and Pre-Petition Agent's sole and absolute discretion.

Without limiting the generality of the foregoing, the Borrower and Guarantors are authorized and directed, without further order of this Court, to pay or reimburse the DIP Agent and the DIP Lenders, in accordance with the DIP Financing Documents, for all present and future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the DIP Agent and the DIP Lenders in connection with the financing transactions as provided in the DIP Financing Documents and this Interim Order, all of which shall be and are included as part of the principal amount of the Obligations and secured by the DIP Collateral (as defined below); provided that DIP Agent shall send a redacted summary invoice (subject in all respects to applicable privilege or work product doctrines) to Debtors, the United States Trustee and, if appointed, the Committee or its counsel.

1.6     Interest.   The rate of interest to be charged for the Advances under the Post-Petition Obligations pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement. The fees charged under the DIP Facility shall be those set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.   The rate of interest to be charged on the Pre-Petition Obligations shall be the rates set forth in the Pre-Petition Financing Documents and shall accrue and be payable at the times and in the manner set forth in the Pre-Petition Financing Documents.   Any and all fees charged under the Pre-Petition Financing Documents shall be as set forth in the Pre-Petition Financings Documents and shall be payable at the times set forth in the Pre-Petition Financing Documents.

1.7     Continuation of Prepetition Procedures.   All pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to the DIP Agent and the DIP Lenders and the funding pursuant to the Pre-Petition Credit Agreement, including any lockbox and/or blocked depository bank account

arrangements, will be the same under the DIP Financing Documents and are hereby approved and shall continue without interruption after the commencement of the Cases.

1.8 <u>Inventory Hedge Contracts</u>. At the request of DIP Agent or with the consent of DIP Agent at the request of Borrower, Borrower shall maintain, purchase, sell, terminate or modify hedge contract(s) or any portion thereof relating to Borrower's Inventory at times and on terms and conditions deemed necessary by, and acceptable to, DIP Agent and DIP Lenders, in their sole discretion without further order of the Court.

1.9 <u>Bailment/Tolling</u>. The Debtors have from time to time in the ordinary course of business entered into bailment agreements, and upon the written consent of the DIP Agent shall be entitled to continue to do so during the Case without court approval, including potential bailment arrangements with Kataman, and in case of any such bailment arrangements, the Secured Parties have or may execute bailment waivers in form and substance acceptable to DIP Agent, acknowledging that the bailed goods are carved out of the Secured Parties' liens. The Secured Parties hereby acknowledge that Secured Parties' shall not have any lien on or interest in or claim against any such bailed goods unless and until such goods have been paid for by the Debtors.

Section 2. <u>Cross-Collateralization, Adequate Protection and Superpriority Administrative Claim Status</u>.

2.1 <u>Cross-Collateralization</u>.

2.1.1 <u>DIP Lien Grant</u>. To secure the prompt payment and performance of any and all Post-Petition Obligations (and upon entry of the Final Order, any and all Obligations, including without limitation, all Pre-Petition Obligations and Post-Petition Obligations) of the Borrower and Guarantors to the DIP Agent and the DIP Lenders of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of itself and the other DIP Lenders, shall have and is hereby granted,

effective as of the Petition Date, valid and perfected first priority (subject to the Permitted Liens and the Carve-Out), security interests and liens in and upon (such security interests and liens collectively, the "**DIP Liens**") all present and after acquired property of the Debtors of any nature whatsoever, including without limitation, all accounts receivable, inventory, general intangibles, chattel paper, real property, leaseholds, fixtures, machinery, equipment, deposit accounts, cash and cash equivalents, investments, patents, trademarks, trade names, copyrights, rights under license agreements and other intellectual property, inter-company notes or receivables due to each Debtor, all of the Collateral (as defined in the DIP Credit Agreement), all of the Collateral (as defined in the Guaranty Security Agreement), all of the Mortgaged Property (as defined in the Mortgages), and all causes of action whether pursuant to federal or state law, and upon entry of the Final Order all claims and causes of action under Chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code, and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, whether pursuant to federal law or applicable state law (collectively, "**Avoidance Actions**") of the Debtors or their estates, and as to all of the foregoing, all rents issues, products, proceeds and profits generated by any of the foregoing (being sometimes collectively referred to in this Interim Order as the "**DIP Collateral**"). The Obligations shall also include all indemnification obligations of Borrower and Guarantors to the Pre-Petition Secured Parties arising under the Pre-Petition Financing Documents, including without limitation the obligations arising under Sections 2.2(f), 3.7, 3.8, 3.9, 4.19(b) and 16.5 of the Pre-Petition Revolving Credit Agreement which survive payment in full of the Pre-Petition Obligations. Further, as consideration to Pre-Petition Secured Parties for their agreement to the terms hereof and as replacement collateral for the Pre-Petition Collateral used, consumed or sold by the Borrower and/or Guarantors in the Case, to the extent of any diminution in value of the Pre-Petition Collateral, the DIP Collateral

shall also secure the Pre-Petition Obligations. Subject to the provisions of Section 2.3.1, the DIP Liens shall be:

(A) Liens on Unencumbered Assets. Pursuant to Section 364(c)(2) of the Bankruptcy Code, continuing valid, perfected, enforceable, first priority, fully perfected liens on and security interests in all of the Debtors' right, title, and interest in and to and under all DIP Collateral that is not otherwise encumbered by a validly perfected security interest on or lien on the Petition Date (the "**Unencumbered Property**").

(B) Liens on Encumbered Assets. Pursuant to Section 364(c)(3) of the Bankruptcy Code, a continuing valid, enforceable, second priority and fully perfected lien on and security interest (other than as set forth in clause (C) below) in all of the Debtors' right, title, and interest, in and to and under all DIP Collateral which is subject to, as of the Petition Date, a Permitted Lien that was perfected prior to the Petition Date or that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(C) Priming Liens on Encumbered Assets. Subject to Permitted Liens, pursuant to section 364(d) of the Bankruptcy Code, valid, enforceable, fully perfected first priority senior priming security interests in and senior priming liens upon all of the Debtors' right, title and interest in, to and under all DIP Collateral, including, without limitation, priming security interests and priming liens which are senior to (i) the security interests and liens held by the Pre-Petition Agent, on behalf of the Pre-

Petition Secured Parties; (ii) the security interests and liens held by Square D and (iii) the Adequate Protection Liens (as defined below).

(D) <u>Liens Senior to Certain Other Liens.</u> Notwithstanding anything to the contrary contained in this Interim Order, the DIP Liens and the First Lien Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided or preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (ii) any liens arising after the Petition Date or (iii) any intercompany or affiliate liens of the Debtors.

2.1.2 <u>Post-Petition Lien Perfection.</u> This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) holding any deposit account of any Borrower or Guarantor (a "**Perfection Act**"). Notwithstanding the foregoing, if the DIP Agent and/or the Pre-Petition Agent shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, each of the DIP Agent and the Pre-Petition Agent is authorized to perform such act, and the Borrower and Guarantors are authorized to perform such act to the extent necessary or required by the DIP Agent and/or the Pre-Petition Agent, which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. The DIP Agent and/or the

Pre-Petition Agent may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law. Should the DIP Agent and/or Pre-Petition Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

2.1.3   Reserved.

2.1.4   Lien Intercreditor Agreement.   Notwithstanding anything to the contrary contained herein, the liens and security interests granted to the Secured Parties to secure the Obligations shall have priority over any and all liens and security interests granted to Square D to secure obligations of any of the Debtors owing to Square D and the rights of the parties with respect to such liens and security interests shall be governed by the Intercreditor Agreement. So long as any Obligations are outstanding under the Pre-Petition Financing Documents, the DIP Financing Documents or DIP Lenders' commitment to make Advances under the DIP Credit Agreement has not been terminated, Square D shall (i) take no action to foreclose upon or otherwise exercise remedies against any DIP Collateral, (ii) be deemed to have consented to any release of DIP Collateral in connection with any disposition of any DIP Collateral authorized under the Pre-Petition Financing Documents or the DIP Financing Documents and, effective upon such release, be deemed to release its liens therein, and (iii) not file any financing statement, trademark filings, copyright filings, patent filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the DIP Collateral.

2.2    <u>Superpriority Administrative Expense</u>. For all Post-Petition Obligations (and upon entry of the Final Order, for all Obligations, including without limitation, all Pre-Petition Obligations and the Post-Petition Obligations) now existing or hereafter arising and for diminution in value of any Pre-Petition Collateral used by the Borrower and/or Guarantors pursuant to this Interim Order, the DIP Financing Documents or otherwise, the DIP Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim in the Borrower's and Guarantors' Estates pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of any of such Debtors, whether now in existence or hereafter incurred by any of such Debtors, and over any and all administrative expenses, adequate protection claims or priority claims of the kind specified in, or ordered pursuant to the Bankruptcy Code, including without limitation, inter alia, Sections 105, 326, 328, 330, 331, 503(b), 506(c) (upon entry of the Final Order), 507, 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "**DIP Superpriority Claim**"), subject only to the Carve Out.

2.3    <u>Carve Out</u>.

2.3.1    <u>Carve Out</u>. The DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection Claims shall be subject only to the right of payment of the following expenses (collectively, the "**Carve-Out**"):

a.    statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. §§ 1930(a)(6) with respect to the Borrower (the "**Statutory Fees**"); and

b.    the reasonable fees and expenses actually incurred on or after the Petition Date, with respect to services performed solely with respect to Debtors and that are allowed and payable by final

order of the Court under Sections 328, 330, or 331 of the Bankruptcy Code, any interim compensation procedures order, and/or any order authorizing the engagement of a CRO (as defined herein), as applicable (collectively, the "**Allowed Professional Fees**"), by attorneys, accountants and other professionals retained by the Debtors, any Committee(s) appointed for the Debtors in the Cases, under Section 327 or 1103(a) of the Bankruptcy Code, and any Chief Restructuring Officer and his/her support personnel approved by Order pursuant to Section 363 of the Bankruptcy Code (collectively with the support personnel, the "**CRO**") (collectively, the "**Professionals**"), in a cumulative, aggregate sum of (i) for the period prior to the occurrence of an Event of Default, not to exceed the lesser of (A) the weekly amounts budgeted to be funded for each such Professional for such week in accordance with the Budget for the time period preceding the occurrence of an Event of Default (to the extent any Event of Default occurs mid-week, pro-rated for such week) and (B) the actual amount of such Allowed Professional Fees incurred on or after the Petition Date up through and including the occurrence of an Event of Default and (ii) for the time period following an Event of Default, an amount equal to A) for counsel to the Debtors, the remaining weekly amounts budgeted to be funded for counsel for the Debtor in accordance with the Budget in an amount but not to exceed $200,000 and B) for the CRO, the remaining weekly amounts

budgeted to be funded for the CRO in accordance with the Budget but not to exceed $75,000 (collectively, the "**Carve-Out Cap**").

c.      Subject to the terms of this Interim Order, the Carve-Out Cap shall be allocated on a Professional by Professional basis based on the amounts budgeted to be funded for each Professional pursuant to the Budget; provided however, that with respect to the Debtors' counsel and the CRO the allocated amounts shall be as set forth in a schedule consistent with the Budget acceptable to DIP Agent.

2.4     Excluded Professional Fees.  Notwithstanding anything to the contrary in this Interim Order, neither the Carve-Out, nor the proceeds of any Advances, Letters of Credit or DIP Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following:  (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief:  (i) challenging the legality, validity, priority, perfection, or enforceability of the Obligations (whether Pre-Petition Obligations or Post-Petition Obligations) or the Secured Parties' liens on and security interests in the Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Obligations (whether Pre-Petition Obligations or Post-Petition Obligations) or the Secured Parties' liens on and security interests in the pre-petition Collateral or the DIP Collateral, or (iii) preventing, hindering or delaying the Secured Parties' assertion or enforcement of any lien, claim, right or security interest or realization upon any in accordance with the terms and conditions of this Interim Order, (b) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of the Secured Parties, except to the extent expressly permitted herein, (c) a request for authorization to obtain Debtor-

in-Possession financing or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the DIP Agent and the DIP Lenders, without the prior written consent of the DIP Agent, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against the Secured Parties, or any of them, or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the Secured Parties, or any of them, under Chapter 5 of the Bankruptcy Code; provided, however, that, subject to the Carve Out Cap, an amount not to exceed $25,000 in the aggregate of the indebtedness incurred pursuant to the DIP Facility may be used to pay Allowed Professional Fees of the Committee to investigate (but not prosecute) claims against and objections with respect to the Pre-Petition Obligations and pre-petition liens and security interests of the Pre-Petition Secured Parties (including, without limitation, issues regarding validity, perfection, priority, or enforceability of the secured claims of the Pre-Petition Secured Parties).

2.5     Carve Out Reserve.  At the DIP Agent's sole discretion, the DIP Agent may at any time establish (and adjust) a reserve against the amount of Advances or other credit accommodations that would otherwise be made available to the Borrower pursuant to the lending formulae contained in the DIP Credit Agreement in respect of the Carve-Out, including for CRO employed by the Debtor.  Nothing contained herein shall limit, modify or restrict in any way the DIP Agent's rights to establish (and adjust) any other reserves in accordance with the DIP Financing Documents.

2.6     Payment of Carve Out.

2.6.1   The Debtors shall maintain an escrow account with Saul Ewing LLP for the payment of Allowed Professional Fees (the "Carve-Out Reserve Account") which

account shall be funded by or on behalf of the Debtors in accordance with the Budget a on a weekly basis until the occurrence of an Event of Default provided there is availability under the DIP Credit Agreement. After an Event of Default, the Carve-Out Reserve Account may continue to be funded at the DIP Agent's option, up to the Carve-Out Cap. From funds in the Carve-Out Reserve Account, Saul Ewing LLP shall pay the Professionals the Allowed Professional Fees in connection with the Carve-Out compensation and reimbursement of expenses that accrue following the Petition Date in compliance with and subject to the Carve-Out provisions of Section 2.3 as the same may be due and payable; provided however, that to the extent that Allowed Professional Fees that have accrued from the Petition Date through and including an Event of Default are less than the amounts funded into the Carve Out Reserve Account, the excess amounts in the Carve Out Reserve Account shall be remitted to the DIP Agent to apply to reduce the Pre-Petition Obligations and/or the Post-Petition Obligations at Agent's sole discretion. For the avoidance of doubt, (a) in making payments from the Carve-Out Reserve Account, Saul Ewing LLP shall be entitled to rely upon written certifications of each Professional as to the amount such Professional is due and owing from the Carve-Out Reserve Account; and (b) in no circumstances shall Saul Ewing LLP be obligated to pay any Professional other than from funds held, from time to time, in the Carve-Out Reserve Account. Funds held in the Carve Out Reserve Account shall be applied to the Allowed Professional Fees that have been incurred following the Petition Date in the manner set forth in this Interim Order in accordance with the procedures established in the Case with the excess, if any, to be remitted to the DIP Agent as set forth in the preceding sentence. Provided that the amounts DIP Agent is obligated to allocate to Professionals as required in Section 2.3 has been funded, all obligations of the DIP Agent and DIP Lenders and Pre-Petition Agent and Pre-Petition Lenders with respect to the Carve-Out shall be terminated.

2.6.2   Carve-Out Cap shall be reduced on a dollar-for-dollar basis on a weekly basis by the amounts actually funded into the Carve-Out Reserve Account. To the extent the Carve-Out Reserve Account has not been funded in accordance with the Budget prior to the occurrence of an Event of Default, the DIP Agent, on behalf of the DIP Lenders, shall remit the difference from collateral proceeds.   Payment of any amounts on account of the Carve Out, whether by or on behalf of the DIP Agent or any DIP Lender, shall not and shall not be deemed to reduce the Obligations, and shall not and shall not be deemed to subordinate any of the DIP Agent's and the DIP Lenders' liens and security interests in the DIP Collateral or their DIP Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party. The DIP Agent and the DIP Lenders shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in Section 2.3, 2.4, 2.5 or 2.6 of this Interim Order shall be construed to obligate the DIP Agent or any DIP Lender in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

Section 3.      Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order, pursuant to sections 363(c)(2) of the Bankruptcy Code, the Debtors are authorized to use Cash Collateral in accordance with the DIP Financing Documents.  Absent entry of the Final Order by the Court, the Debtors shall no longer be authorized to use Cash Collateral at the expiration of the Interim Period.  Nothing in this Interim Order shall be deemed to authorize the use, sale, lease, encumbrance, or disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as provided for herein.

3.1    Pre-Petition Agent's Adequate Protection.  As adequate protection for the interests of the Pre-Petition Agent, for the benefit of the Pre-Petition Lenders and Pre-Petition Issuer, on account of the Adequate Protection Obligations, the Pre-Petition Agent is being provided with adequate protection (collectively, the "**First Lien Adequate Protection**").

3.1.1    First Lien Adequate Protection Liens.  The Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Lenders and Pre-Petition Issuer, is hereby granted valid and perfected replacement and additional security interests in, and liens (the "**First Lien Adequate Protection Liens**") on the DIP Collateral to the extent of the Adequate Protection Obligations, which shall be junior in all respect to the DIP Liens, the Permitted Liens and the Carve Out.

a.    The First Lien Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully perfected as of the Petition Date and not subject to subordination or avoidance, for all purposes in the Cases and subject only to the DIP Liens, the Permitted Liens and the Carve Out.

b.    Except for the DIP Liens, the Permitted Liens and the Carve Out, the First Lien Adequate Protection Liens shall not be made subject to or pari passu with any lien or security interest by any court order heretofore or hereafter entered in the Cases (unless with the consent of the Pre-Petition Agent and the Pre-Petition Lenders).  The First Lien Adequate Protection Liens shall not be subject to sections 506(c) (upon entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made pari passu with or senior to the First Lien Adequate Protection Liens.

3.2    First Lien Adequate Protection Claims.  As further adequate protection, the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, is hereby granted an

allowed administrative claim (the "**First Lien Adequate Protection Claim**") against the Debtors' estates under sections 503 and 507(b) of the Bankruptcy Code to the extent that the First Lien Adequate Protection Liens do not adequately protect the diminution in the value of the liens and security interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, which First Lien Adequate Protection Claim shall be subject and subordinate only to the DIP Superpriority Claim and the Carve Out and shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, which are now existing, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (upon entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

      3.2.1 <u>Interest.</u> As further adequate protection, the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, shall be entitled to interest on account of the outstanding Pre-Petition Obligation, which shall be accrued and payable and paid in accordance with the Pre-Petition Financing Documents.

      3.2.2 <u>Additional Adequate Protection.</u> As further adequate protection, and without limiting any rights of the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for the Adequate Protection Obligations, the Debtors shall pay or reimburse the Pre-Petition Agent for any and all of its accrued and payable reasonable fees, costs, expenses and charges payable under the Pre-Petition Financing Documents, including, without limitation, the fees and expenses of the Pre-Petition Agent as provided in Section 16.9 of the Pre-Petition Credit Agreement, whether accrued pre-petition or post-petition, all without further notice, motion or application to, order of, or hearing before, this Court;

provided that DIP Agent shall be permitted to add such amounts to the Obligations following submission of a redacted summary invoice to the Debtors, the United States Trustee and, if appointed, the Committee or its counsel, of a written invoice (subject in all respects to applicable privilege or work product doctrines). Such written invoices shall include (i) Blank Rome LLP, counsel to the Pre-Petition Agent, (ii) RAS Management, consultant to the Agent; (iii) and any other professional, advisor or agent reasonably retained by the Pre-Petition Agent or its counsel in connection with the Pre-Petition Financing Documents pursuant to the Cases; provided that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or the United States Trustee Guidelines. No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court.

     3.3    <u>Square D's Adequate Protection</u>. In consideration for and on account of the Adequate Protection Obligations, without conceding any entitlement thereto and solely to the extent that Square D has not waived its right to seek or request it under the Intercreditor Agreement and solely to the extent the Pre-Petition Square D Collateral held by Square D was holds valid, perfected, enforceable and unavoidable liens and that it is ultimately determined that Square D is entitled to such adequate protection, Square D is being provided with adequate protection (the "**Second Lien Adequate Protection**" and, together with the First Lien Adequate Protection, the "**Adequate Protection**").

     3.3.1    <u>Second Lien Adequate Protection Liens</u>. Square D is hereby granted valid and perfected replacement security interests in, and liens on all of the Hussey's right, title and interest in, and to the same items and types of DIP Collateral on which Square D held a valid, perfected, enforceable and unavoidable lien as of the Petition Date (the "**Second Lien Adequate Protection Liens**," and together with the First Lien Adequate Protection Liens,

the "**Adequate Protection Liens**"), which liens are valid, binding enforceable and fully perfected as of the Petition Date and which liens are subordinate and subject to (i) the DIP Liens, (ii) the First Lien Adequate Protection Liens, (iii) the Permitted Liens and (iv) the Carve Out.

        3.3.2   Second Lien Adequate Protection Claims. As further adequate protection, to the extent it is determined that Square D is entitled thereto, to the extent that the Second Lien Adequate Protection Liens do not adequately protect the diminution in the value of Square D's interest in the Pre-Petition Square D Collateral provided that such liens were valid perfected, enforceable and unavoidable, Square D is hereby granted an allowed administrative claim (the "**Second Lien Adequate Protection Claim**", and together with the First Lien Adequate Protection Claim, the "**Adequate Protection Claims**") against the Debtors' Estates under sections 503 and 507(b) of the Bankruptcy Code, provided, however, that the Second Lien Adequate Protection Claim shall be subject and subordinate to the (i) DIP Superpriority Claim, (ii) the First Lien Adequate Protection Claim and the (iii) Carve Out.

**Section 4.**    Default; Rights and Remedies; Relief from Stay.

        4.1    Events of Default. The occurrence of any Event of Default as defined and under the DIP Credit Agreement shall constitute an "**Event of Default**" under this Interim Order.

        4.2    Rights and Remedies Upon Event of Default/Relief from Stay.

        4.2.1   Upon the occurrence of and during the continuance of an Event of Default, and without the necessity of seeking relief from the automatic stay or any further Order of the Bankruptcy Court (i) the DIP Agent and DIP Lenders shall no longer have any obligation to make any advances under the DIP Facility; (ii) all amounts outstanding under the DIP Financing Documents and Pre-Petition Financing Documents shall be automatically accelerated; (iii) the DIP Agent and the Pre-Petition Agent shall be entitled to immediately terminate the Debtors' right to use Cash Collateral by written notice thereof to counsel for the Debtors, counsel

for any official committee of unsecured creditors ("Committee"), and the U.S. Trustee, without further application or order of this Court, (iv) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the DIP Credit Agreement and the other DIP Financing Documents and the Pre-Petition Financing Documents, (iv) the DIP Agent and the Pre-Petition Agent shall be entitled to charge the default rate of interest under the DIP Facility and under the Pre-Petition Financing Documents and (v) subject to the notice requirement set forth below, both the DIP Agent and the Pre-Petition Agent shall be entitled to take any act or exercise any other right or remedy as provided in this Interim Order, the DIP Financing Documents, the Pre-Petition Financing Documents or applicable law, including, without limitation, setting off any Obligations or Pre-Petition Obligations with DIP Collateral or Pre-Petition Collateral or proceeds in any Secured Parties' possession, and enforcing any and all rights with respect to the DIP Collateral or Pre-Petition Collateral.

4.2.2    Without further notice, application or order of this Court, upon the occurrence and during the continuance of an Event of Default, and after providing three (3) business days' prior written notice thereof (which three (3) day period only applies to the DIP Collateral or Pre-Petition Collateral enforcement remedies described below) to counsel for the Debtors, counsel for any Committee, and the U.S. Trustee, the DIP Agent for the benefit of itself and the DIP Lenders, and the Pre-Petition Agent, for the benefit of itself and the other Pre-Petition Secured Parties, shall be entitled to take any action and exercise all rights and remedies provided to them by this Interim Order, the DIP Financing Documents or the Pre-Petition Financing Documents or applicable law as the DIP Agent or the Pre-Petition Agent may deem appropriate in their sole discretion to, among other things, proceed against and realize upon the DIP Collateral or Pre-Petition Collateral or any other assets or properties of the Debtors' estates upon which the DIP Agent, for the benefit of itself and the DIP Lenders and the Pre-Petition

Agent, for the benefit of itself and the other Pre-Petition Secured Parties, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible payment of all the Obligations including the Pre-Petition Obligations. During such three (3) business day-period, the Debtors and/or the Committee shall be entitled to seek an emergency hearing with the Court, at which the only issue the Debtors and/or the Committee shall be allowed to assert is whether an Event of Default actually occurred.

Additionally, upon the occurrence and during the continuance of an Event of Default and the exercise by the DIP Agent or the Pre-Petition Agent of their respective rights and remedies under this Interim Order, the DIP Financing Documents or Pre-Petition Financing Documents, provided that the Debtors and the DIP Agent agree upon an acceptable wind down budget with agreed upon carve-out amounts for Debtors' counsel, the Debtors shall assist the DIP Agent and the Pre-Petition Agent in effecting any sale or other disposition of the DIP Collateral or Pre-Petition Collateral required by the DIP Agent and Pre-Petition Agent, including any sale of DIP Collateral or Pre-Petition Collateral pursuant to section 363 of the Bankruptcy Code or assumption and assignment of DIP Collateral or Pre-Petition Collateral consisting of contracts and leases pursuant to section 365 of the Bankruptcy Code, in each case, upon such terms that are designed to maximize the proceeds obtainable from such sale or other disposition that are otherwise acceptable to the DIP Agent and the Pre-Petition Agent, and the Debtors shall fully cooperate with the Secured Parties in their exercise of rights and remedies.

4.2.3   Upon and after the occurrence of an Event of Default, and subject to the three day notice provision provided above, in connection with a liquidation of any of the DIP Collateral, the DIP Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of the Debtors, to: (i) upon the entry of the Final Order, enter upon, occupy and use any real or personal property, fixtures,

equipment, leasehold interests or warehouse arrangements owned or leased by the Debtors; provided that prior to entry of the Final Order, the DIP Agent may be permitted to do so in accordance with their pre-petition landlord's waivers and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses. The DIP Agent and the DIP Lenders will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property (other than the Debtors) for the period of time that the DIP Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the Agent actually occupies or uses such assets or properties).

4.2.4    The rights and remedies of the Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the Secured Parties may have under the DIP Financing Documents, Pre-Petition Financing Documents or otherwise. The fourteen day stay provisions of Federal Rules of Bankruptcy Procedure 6004(h) are hereby waived.

4.3    <u>Expiration of Commitment/Relief from Stay</u>. Upon the expiration of the Borrower's authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this Interim Order (except if such authority shall be extended with the prior written consent of the DIP Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by the DIP Agent or any DIP Lender) or upon the Termination Date (as defined in the DIP Credit Agreement), unless an Event of Default occurs sooner and the automatic stay has been lifted or modified as provided herein, all of the Obligations shall immediately become due and payable and the Secured Parties shall be automatically and completely relieved from the effect of any stay under Section 362 of the

Bankruptcy Code, any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to the Secured Parties pursuant to the terms and conditions of the DIP Financing Documents or this Interim Order, and the DIP Agent, acting on behalf of itself and the other DIP Lenders, shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Interim Order, the DIP Financing Documents or applicable law which the DIP Agent may deem appropriate and to proceed against and realize upon the DIP Collateral or any other property of the Borrower's and Guarantors' Estates.

4.4     Landlord Waiver Agreements.     Upon entry of the Final Order unless otherwise permitted in any landlord waiver or Waiver (as defined in the Pre-Petition Credit Agreement), all rights and remedies granted in any landlord waiver and/or Waiver executed and delivered in connection with the Pre-Petition Obligations and Pre-Petition Credit Agreement, and all rights granted to the Secured Parties therein, including the right to access any premises leased by Debtors and access the Pre-Petition Collateral, shall be deemed to be continuing, enforceable and applicable to and binding upon the landlords and other parties to such waiver agreements with respect to the DIP Collateral and Obligations.

Section 5.     Representations; Covenants; and Waivers.

5.1     Objections to Pre-Petition Obligations.     The extent, legality, validity, perfection, enforceability and other matters noted in this Interim Order with respect to the Pre-Petition Financing Documents and Secured Parties' liens in the Pre-Petition Collateral and in the DIP Collateral as security for the Pre-Petition Obligations and the Adequate Protection Obligations, are for all purposes subject only to the rights of any party in interest with requisite standing (including any Chapter 7 trustee appointed during the Challenge Period) (as defined below) for a period of forty-four (44) days from the Petition Date (such period hereafter referred

to as the **"Challenge Period"**) to seek to (a) challenge in any manner the Pre-Petition Obligations, and/or assert claims or causes of action of any nature in any way arising out of, relating to, or in connection with, the Pre-Petition Obligations or the Pre-Petition Financing Documents, or (b) assert or allege any other matters in any way arising out of, relating to, or in connection with, the Pre-Petition Obligations or the Pre-Petition Financing Documents, or (c) challenge the extent, legality, validity, perfection and/or enforceability of any Secured Party's pre-petition liens upon and security interests in the Pre-Petition Collateral pursuant to the Bankruptcy Code (the actions described in clause (a), (b) and/or (c) above, collectively referred to herein as an **"Objection"**). If an Objection is not timely filed within such Challenge Period (I) the Pre-Petition Obligations shall be deemed allowed in full and the Secured Parties' security interests in and liens upon the Pre-Petition Collateral shall be recognized and allowable as legal, valid, binding, in full force and effect, non avoidable, perfected and senior to all other liens (subject only to Permitted Liens to the extent such liens are valid, perfected and unavoidable) upon and claims against the Pre-Petition Collateral with respect to all parties in this Case and not be subject to any counterclaims, setoff, recoupment, deduction, or claim of any kind or any defenses, or any further objection or challenge by any party at any time, and (II) the Pre-Petition Secured Parties and each their respective agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Pre-Petition Financing Documents entered into with Borrower and/or Guarantors prior to the entry of this Interim Order and shall not be subject to any further objection or challenge by any party at any time. Nothing in this Interim Order shall be deemed to confer standing to commence any action or proceeding on either the Committee, or any other party-in-interest. After expiration of the Challenge Period, the release set forth in Section 5.4 with no Objection having been interposed on behalf of the

Debtors' estates, shall be binding on the Debtors' estates, including any subsequently appointed trustee, case fiduciary or successors and assigns. To the extent that the Committee with appropriate standing timely files an Objection on behalf of any of the Estates against any Secured Party the releases set forth in Section 5.4 shall not be binding with respect to specific matters asserted in the Objection.

5.2     Debtors' Waivers. At all times during the Cases, and whether or not an Event of Default has occurred, unless otherwise consented to by the DIP Agent in writing in advance (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender), the Debtors irrevocably waive any right that they may have to seek authority: (i) to use Cash Collateral of the Secured Parties under Section 363 of the Bankruptcy Code except to the extent expressly permitted in this Interim Order; (ii) until all Obligations are indefeasibly paid and satisfied in full, to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code, other than from the DIP Agent and the DIP Lenders; (iii) to challenge the application of any payments authorized by this Interim Order as pursuant to Section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations; (iv) to propose or support a plan of reorganization that does not provide for the indefeasible payment in full and satisfaction of all Obligations on the effective date of such plan; or (v) to seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the DIP Agent and the DIP Lenders as provided in this Interim Order or the DIP Financing Documents or the DIP Agent's and the DIP Lenders' exercise of such rights or remedies.

5.3     Section 506(c) Claims. Effective upon the entry of a Final Order approving the Motion, no costs or expenses of administration which have or may be incurred in

the Cases at any time shall be charged against the DIP Agent or any DIP Lender, their respective claims or the DIP Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of the DIP Agent (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender). Upon entry of a Final Order, the Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or DIP Collateral.

      5.4    Release.

      5.4.1  In consideration of and as a condition to the DIP Agent and the DIP Lenders making Advances and providing other credit and financial accommodations to the Borrower pursuant to the provisions of this Interim Order and the DIP Financing Documents, each Debtor, on behalf of itself, and other legal representatives (collectively, the "**Releasors**"), hereby absolutely releases, forever discharges and acquits each Pre-Petition Secured Party and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (Pre-Petition Agent, each Pre-Petition Lender and all such other parties being hereinafter referred to collectively as "**Releasees**") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, defenses rights of set-off, demands and liabilities whatsoever (individually, a "**Pre-Petition Released Claim**" and collectively, the "**Pre-Petition Released Claims**") of every kind, name, nature and description, known or unknown, suspected or unsuspected, both at law and in equity, which, including, without limitation, any so-called "lender liability" claims or defenses, that any

Releasor may now or hereafter own, hold, have or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the date of this Interim Order, in respect to the Debtors, the Pre-Petition Obligations, the Pre-Petition Financing Documents and any Advances, Letters of Credit or other financial accommodations made by the Pre-Petition Secured Parties to the Debtors pursuant to the Pre-Petition Financing Documents. In addition, upon the indefeasible payment in full of all Obligations owed to the DIP Agent and the DIP Lenders by the Debtors and termination of the rights and obligations arising under this Interim Order and the DIP Financing Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Agent), the DIP Agent and the DIP Lenders shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Financing Documents or this Interim Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated), on terms and conditions acceptable to the DIP Agent.

5.4.2 Upon the entry of this Interim Order, each Releasor hereby absolutely, unconditionally and irrevocably, covenants and agrees with each Releasee that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Pre-Petition Released Claim released and discharged by each Releasor pursuant to Section 5.4.1 above. If any Releasor violates the forgoing covenant, Debtors agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

Section 6.     Other Rights and Obligations.

608318.1 9/27/11

6.1    No Modification or Stay of this Interim Order. Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the DIP Financing Documents or any term hereunder or thereunder, (ii) the failure to obtain a Final Order pursuant to Bankruptcy Rule 400l(c)(2), or (iii) the dismissal or conversion of one or more of the Cases, the DIP Agent and the DIP Lenders shall be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to Section 364(e) of the Bankruptcy Code and the Interim Order and DIP Financing Documents.

6.2    Power to Waive Rights; Duties to Third Parties. The Secured Parties shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of the Secured Parties (the "**Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s), subject to the Intercreditor Agreement. Any waiver by any Secured Party of any Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to any Secured Party, subject to the Intercreditor Agreement.

6.3    Disposition of Collateral   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without an order of this Court and the consent of the DIP Agent, except for sales of the Borrower's Inventory in the ordinary course of their business or as otherwise permitted in the DIP Credit Agreement.

6.4    Inventory. The Debtors shall not, without the prior written consent of the DIP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender), (a) enter into any agreement to return any

inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(l) of the Bankruptcy Code or otherwise.

6.5 <u>Reservation of Rights</u>. The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of the Secured Parties to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Financing Documents, the Pre-Petition Financing Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

6.6 <u>Modification of the Automatic Stay.</u> The automatic stay under Bankruptcy Code section 362 (a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order and the DIP Financing Documents, including without limitation the application of collections, authorization to make payments, granting of liens and perfection of liens.

6.7 <u>Binding Effect</u>.

6.7.1 The provisions of this Interim Order, the DIP Financing Documents, the Obligations, the DIP Superpriority Claim, First Lien Adequate Protection Liens, First Lien Adequate Protection Claims and any and all rights, remedies, privileges and benefits in favor of the DIP Agent and the DIP Lenders, Pre-Petition Secured Parties provided or

acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

6.7.2    Any order dismissing one or more of the Cases under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the DIP Agent's and the DIP Lenders' and the Pre-Petition Secured Parties liens on and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim and DIP Liens and First Lien Adequate Protection Liens and First Lien Adequate Protection Claims of the DIP Agent and the DIP Lenders in the DIP Collateral.

6.7.3    In the event this Court modifies any of the provisions of this Interim Order or the DIP Financing Documents following a Final Hearing; (a) such modifications shall not affect liens with respect to the DIP Collateral, the DIP Superpriority Claim, the First Lien Adequate Protection Liens or the First Lien Adequate Protection Claims of the DIP Agent and the DIP Lenders and Pre-Petition Agent and Pre-Petition Lenders specifically provided pursuant to this Interim Order and the priorities of the DIP Agent and the DIP Lenders and Pre-Petition Agent and Pre-Petition Lenders granted herein; (b)  upon entry of the Final Order such modifications shall not affect the rights or priorities of any portion of the Obligations which arises or is incurred or is advanced prior to such modifications; and (c) this Interim Order

shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

6.7.4   This Interim Order shall be binding upon the Debtors, their Estates, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtors and shall inure to the benefit of the Secured Parties, the Debtors and their respective successors and assigns (collectively, the "**Successor Cases**").

6.8   Marshalling.   In no event shall the Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.

6.9   Proofs of Claim. Notwithstanding the entry of an order establishing a bar date in any of these Cases, the Pre-Petition Secured Parties shall not be required to file proofs of claim in any of the Cases with respect to any of the Pre-Petition Obligations or any other claims or liens granted hereunder or created hereby. The Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, is hereby authorized and entitled, in its sole and absolute discretion, but in no event is required, to file (and amend and/or supplement, as it sees fit) aggregate proofs of claim in each of the Cases on behalf of all of the Pre-Petition Secured Parties in respect of the Pre-Petition Obligations. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition Secured Parties. Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Cases will so provide.

6.10   Waiver of Bankruptcy Rule 6003(b), 6004(a) and 6004(h).   The 21 day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a) and the 14 day stay of 6004(h) are hereby waived.

6.11    Order Controls. Unless this Interim Order specifically provides otherwise, in the event of a conflict between (a) the terms and provisions of the DIP Financing Documents and/or the Pre-Petition Financing Documents or (b) the terms and provisions of this Interim Order, then in each case the terms and provisions of this Interim Order shall govern, interpreted as most consistent with the terms and provisions of the DIP Financing Documents.

6.12    Objections Overruled. All objections to the entry of this Interim Order are, to the extent not withdrawn, hereby overruled.

6.13    No Third Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

Section 7.    Final Hearing and Response Dates.

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for _____, 2011 at [_____] before this Court. The Debtors shall promptly mail copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request for notices with this court and to any Committee after same has been appointed, or Creditors' Committee counsel, if same shall have filed a request for notice. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtors, Jeffrey C. Hampton, Esquire, Saul Ewing LLP, Centre Square West, 1500 Market Street, 38th Floor, Philadelphia, PA 19102; (b) counsel for the Agent, Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801; Attn: Regina Stango Kelbon, Esq., Fax: (302) 425-6424 and Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174, Attn: Lawrence F. Flick, II, Esq., Fax: (215) 832-5556; (c) counsel to any Committee; (d) counsel to Square D and (e) the U.S. Trustee; and shall

be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later than [_____, 2011], by 4:00 p.m. prevailing Eastern time.

Dated: _____
      Wilmington, Delaware

                                _____
                                UNITED STATES BANKRUPTCY JUDGE