# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Hussey Copper Corp.,[1] | ) | Case No. 11-13010 (BLS) |
| Debtor. | ) | |
| In re: | ) | Chapter 11 |
| Hussey Copper Ltd., | ) | Case No. 11-13012 (BLS) |
| Debtor. | ) | |
| In re: | ) | Chapter 11 |
| OAP Real Estate, LLC, | ) | Case No. 11-13013 (BLS) |
| Debtor. | ) | |
| In re: | ) | Chapter 11 |
| Cougar Metals, Inc., | ) | Case No. 11-13014 (BLS) |
| Debtor. | ) | |
| In re: | ) | Chapter 11 |
| Orbie Trading, L.P., | ) | Case No. 11-13015 (BLS) |
| Debtor. | ) | |
| In re: | ) | Chapter 11 |
| Hussey Exports Ltd., | ) | Case No. 11-13016 (BLS) |
| Debtor. | ) | Joint Administration Requested<br>**Related to Docket No. ___** |

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Hussey Copper Corp. (9993); Hussey Copper Ltd. (9994); OAP Real Estate, LLC (1298); Cougar Metals, Inc. (1674); Orbie Trading, L.P. (4969); and Hussey Exports Ltd. (8997). The Debtors' address is 100 Washington Street, Leetsdale, Pennsylvania 15056.

{2921691:}

# ORDER GRANTING MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (B) APPROVING ASSET PURCHASE AGREEMENT AND (C) GRANTING RELATED RELIEF

Upon the Motion of the Debtors for Entry of an Order (A) Authorizing the Sale of Substantially all of the Debtors' Assets, Free and Clear of Liens, Claims, Encumbrances and Interests, (B) Approving Asset Purchase Agreement and (C) Granting Related Relief [Docket No. ____](the "Motion");[2]

This Court having held a hearing on _____, 2011 and entered an order dated _____, 2011 (the "Bid Procedures Order"), pursuant to which this Court, *inter alia*:

(a) approved the Bid Procedures;

(b) approved the Assumption and Assignment Procedures;

(c) approved the Escrow Deposit Agreement;

(d) established the date and time for the Auction;

(e) established the date and time for the Sale Hearing;

(f) approved the form and manner of Auction and Sale Notice; and

(g) approved the Break-Up Fee as well as the reimbursement of Expenses as provided in the Kataman Agreement and the Bid Procedures.

**THE COURT FINDS THAT:**

### JURISDICTION, FINAL ORDER, AND STATUTORY PREDICATES

A. This Court has jurisdiction over the Motion, the transactions contemplated by the Kataman Agreement and any other ancillary documents and agreements related thereto pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This matter is a core proceeding pursuant to 28 U.S.C.

---

[2] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Motion.

§ 157(b)(2)(A), (N) and (O). Venue of these cases and the Motion in this judicial district is proper under 28 U.S.C. §§ 1408 and 1409.

B. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

C. The statutory and rule-based predicates for the relief sought in the Motion are sections 105(a), 363(b), (f) and (m), and 365(a), (b), and (f) of the United States Code, 11 U.S.C. § 101 *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware.

D. KHC Acquisition, LLC (the "Buyer") is a party in interest in the Debtors' chapter 11 cases and has standing to raise, appear and be heard on any issue in such cases.

### SOUND BUSINESS PURPOSE

E. The Debtors seek to convey the Acquired Assets, all of which are related to the Debtors' businesses.

F. The Debtors have demonstrated both: (1) good, sufficient and sound business purposes and justifications for the sale of the Acquired Assets (the "Sale"); and (2) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, the value of the Acquired Assets would be harmed by any delay of the Sale. Time is of the essence in consummating the proposed Sale.

### HIGHEST AND BEST OFFERS

G. On _____, 2011, this Court entered the Bid Procedures Order [Docket No. ___] approving Bid Procedures for the Acquired Assets. The Bid Procedures provided a full, fair and reasonable opportunity for any person to make an offer to purchase the Acquired Assets. The Debtors conducted an Auction in accordance with the Bid Procedures Order and complied with that order in all respects. The Buyer complied with the Bid Procedures Order.

H. As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing: (1) the Debtors have adequately marketed the Acquired Assets; (2) the purchase price contained in the Kataman Agreement constitutes the highest and otherwise best offer for the Acquired Assets and provides fair and reasonable consideration therefor; (3) the Sale will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative; (4) no other party has offered to purchase the Acquired Assets for greater economic value to the Debtors or their estates; and (5) the consideration to be paid by the Buyer under the Kataman Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia.

I. The Buyer has provided the Debtors with an aggregate deposit in an amount equal to $6,500,000 (such amount, together with the interest accrued thereon, the "Deposit"), which Deposit is currently being held by U.S. Bank in an interest-bearing account.

J. [_____] is the Back-Up Bidder, by virtue of its final bid at the Auction.

### BEST INTEREST OF CREDITORS

K. Approval of the Kataman Agreement and the consummation of the Sale to the Buyer at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

## GOOD FAITH

L.  The Kataman Agreement and each of the transactions contemplated therein were negotiated, proposed and entered into by the Debtors and the Buyer in good faith, without collusion and from arm's-length bargaining positions after a period in which third parties had ample opportunity to seek information and enter into discussions or negotiations with the Debtors and their retained advisors and professionals concerning a sale of the Acquired Assets. The Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Kataman Agreement to be avoided or impose costs and damages under section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Bankruptcy Rules or applicable law. Specifically, the Buyer's discussions and negotiations with non-debtor parties to executory contracts and unexpired leases of the Debtors and other creditors of the Debtors were conducted in good faith, without collusion, from arm's length bargaining positions, and did not impair the ability of the Debtors or the Buyer to fully and faithfully discharge their respective duties and obligations under the Bankruptcy Code.

M.  The Kataman Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States.

## NOTICE OF THE MOTION, THE AUCTION AND THE CURE AMOUNTS

N.  As evidenced by the certificates of service filed with the Court: (1) proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided by the Debtors; (2) such notice was good, sufficient and appropriate under the particular circumstances; and (3) no other or further notice of the Motion, the proposed Sale, the Bid Procedures, the

Auction or the Sale Hearing is or shall be required. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to:

  (i)  the Office of the United States Trustee for the District of Delaware;

  (ii)  the Debtors' senior secured and subordinated secured creditors;

  (iii)  all parties known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Acquired Assets;

  (iv)  all persons or entities known or reasonably believed to have expressed an interest in acquiring the Acquired Assets;

  (v)  all applicable state and local taxing authorities;

  (vi)  non-debtor parties to the Assumed Contracts;

  (vii)  the Debtors' twenty largest creditors; and

  (viii)  all parties that have requested personal notice pursuant to Bankruptcy Rule 2002.

O.  Additionally, the Debtors published notice of the Sale in the national edition of the _____. With regard to parties who have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors, the Court finds that such publication notice was sufficient and reasonably calculated under the circumstances to reach such parties.

P.  In accordance with the provisions of the Bid Procedures Order, the Debtors have served notice of their intent to assume and assign the Assumed Contracts and of the related proposed Cure Amounts (the "Contract & Cure Schedule") upon each nondebtor counterparty to the Assumed Contracts. The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given with respect to the Cure Amounts for the Assumed Contracts listed in the Contract & Cure Schedule and the assumption and assignment

of the Assumed Contracts. All nondebtor parties to the Assumed Contracts identified in the Contract & Cure Schedule have had a reasonable opportunity to object to both the Cure Amounts listed in the Contract & Cure Schedule and the assumption and assignment of the Assumed Contracts.

Q. The following Assignment Objections (the "Filed Assignment Objections") have been filed with respect to the Motion:

| Docket No. | Objecting Party or Parties |
|---|---|
|  |  |
|  |  |
|  |  |

### SECTION 363(F) REQUIREMENTS MET FOR FREE AND CLEAR SALES

R. The Debtors may sell the Acquired Assets free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever (collectively, "Claims") (except for any Assumed Liabilities), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Claims who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Claims who did object to the Sale of the Acquired Assets free and clear of Claims fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims, if any, attach to the proceeds of the Sale ultimately attributable to the property against which they have a Claim, in the same order of priority and with the same validity, force and effect that such holder had prior to the Sale, subject to any defenses of the Debtors.

S. The Buyer would not have entered into the Kataman Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Acquired Assets were not free and clear of all Claims other than Permitted Encumbrances and Assumed Liabilities, or if the Buyer would, or in the future could, be liable for any such Claims, including, as applicable, certain liabilities (collectively, the "Excluded Liabilities") that will not be assumed by the Buyer, as described in Section 2.4 of the Kataman Agreement.

T. Without limiting the generality of the foregoing, the Kataman Agreement provides the Debtors with reasonably equivalent value and fair consideration (as those terms are defined in the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the Bankruptcy Code), and was not entered into for the purpose of, nor does it have the effect of, hindering, delaying or defrauding creditors of the Debtors under any applicable law. Except for the Assumed Liabilities and the obligations of the Buyer specifically set forth in the Kataman Agreement or in connection with this Order or other orders of this Court, the Sale and the transactions comprising the Sale shall not impose nor result in the imposition of any liability or responsibility on Buyer or its affiliates, successors or assigns or any of their respective assets (including the Acquired Assets), and the transfer of the Acquired Assets to the Buyer does not and will not subject the Buyer or its affiliates, successors or assigns or any of their respective assets (including the Acquired Assets), to any liability for any Claims, including, without limitation, for any successor liability, other than as expressly identified as an Assumed Liability.

### ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS

U. The assumption and assignment of the Assumed Contracts are integral to the Kataman Agreement, are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtors' sound business judgment.

V. With respect to each of the Assumed Contracts, the Debtors have met all requirements of section 365(b) of the Bankruptcy Code. Further, the Buyer has provided all necessary adequate assurance of future performance under the Assumed Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code. Accordingly, the Assumed Contracts may be assumed by the Debtors and assigned to the Buyer, as provided for in the Bid Procedures Order, the Motion and the Kataman Agreement and upon such assumption and assignment, the Debtors shall be relieved of liability from any future breach of the Assumed Contracts pursuant to section 365(k) of the Bankruptcy Code, and the Buyer shall have no liability under the Assumed Contracts for any obligation arising prior to assignment or relating to a time period prior to assignment.

## VALIDITY OF THE TRANSFER

W. As of the closing of the Sale (the "Closing"), the transfer of the Acquired Assets to the Buyer will be a legal, valid and effective transfer of the Acquired Assets, and will vest the Buyer with all right, title and interest in and to the Acquired Assets, free and clear of: (1) all Claims other than Permitted Encumbrances and Assumed Liabilities; and (2) all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtors, claims (as defined in section 101(5) of the Bankruptcy Code), rights or causes of action (whether in law or in equity, including any rights or causes of action based on theories of transferee or successor liability under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), obligations, demands, guaranties, rights, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise.

X. The Kataman Agreement is not a *sub rosa* chapter 11 plan for which approval has been sought without the protections a disclosure statement would afford.

Y. The Debtors: (1) have full company power and authority to execute the Kataman Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate action of the Debtors; (2) have all company power and authority necessary to consummate the transactions contemplated by the Kataman Agreement; (3) have taken all actions necessary to authorize and approve the Kataman Agreement and the consummation by the Debtors of the transactions contemplated thereby; and (4) require no consents or approvals, other than those expressly provided for in the Kataman Agreement, to consummate such transactions.

Z. The Debtors have good title to the Acquired Assets, and, accordingly the transfer of such Acquired Assets as contemplated by the Kataman Agreement: (1) is or will be a legal, valid and effective transfer of the property of the Debtors' estates to the Buyer; and (2) vests or will vest in the Buyer, all right, title and interest of the Debtors in and to all of the Acquired Assets free and clear of all Claims under sections 363(f) and 105(a) of the Bankruptcy Code.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

<u>GENERAL PROVISIONS</u>

1. The Motion is granted as set forth herein and the Sale is approved as set forth in this Order.

2. The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding

of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. All objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits, except as expressly provided herein.

### APPROVAL OF THE KATAMAN AGREEMENT

4. The Kataman Agreement, all transactions contemplated therein and all of the terms and conditions thereof are hereby approved.

5. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under and comply with the terms of the Kataman Agreement, with such nonmaterial modifications as may be agreed to by the parties, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Kataman Agreement and this Order.

6. The Debtors, as well as their affiliates, officers, employees and agents, are authorized to execute and deliver, and authorized to perform under, consummate and implement, the Kataman Agreement, in substantially the same form as the Kataman Agreement attached hereto as Exhibit 1, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Kataman Agreement and to take all further actions as may be: (a) reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, the Acquired Assets; or (b) necessary or appropriate to the performance of the obligations contemplated by the Kataman Agreement, all without further order of the Court.

## TRANSFER OF ACQUIRED ASSETS

7. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets in accordance with the terms of the Kataman Agreement. The Acquired Assets shall be transferred to the Buyer, and upon consummation of the Kataman Agreement, such transfer shall: (a) be valid, legal, binding and effective; (b) vest the Buyer with all right, title and interest in the Acquired Assets; and (c) be free and clear of all Claims except for Permitted Encumbrances and Assumed Liabilities with all Claims to attach to the net proceeds of the Sale, in the order of their priority and with the same validity, force and effect which they now have against the Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

8. At the Closing, all Claims, if any, on the Acquired Assets shall attach to the proceeds of the sale of the Acquired Assets in the same relative order of priority; and the proceeds from the sale of the Acquired Assets shall be paid in accordance with the relevant provisions of the Bankruptcy Code and any orders of this Court.

9. Except as otherwise provided in the Kataman Agreement, all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding claims (as defined in section 101(5) of the Bankruptcy Code), except for Permitted Encumbrances and Assumed Liabilities, arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the operation of the Debtors' businesses prior to Closing or the transfer of the Acquired Assets to the Buyer, are hereby forever barred, estopped and permanently enjoined from asserting such claims against the Buyer, its successors or assigns, its property or the Acquired Assets. No such persons or entities shall assert against the Buyer or their successors in interest any such claim arising from, related to or in connection

with the ownership or operation of the Acquired Assets prior to the Closing, except for Permitted Encumbrances and Assumed Liabilities.

10. This Order: (a) shall be effective as a determination that, as of Closing, all Claims other than Permitted Encumbrances and Assumed Liabilities relating to the Acquired Assets have been unconditionally released, discharged and terminated as to the Acquired Assets, and that the conveyances described herein have been effected; and (b) is and shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Kataman Agreement.

11. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against or in the Debtors or the Acquired Assets shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and execution by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtors or the Acquired Assets or otherwise, then only with regard to Acquired Assets that are purchased by the Buyer pursuant to the Kataman Agreement and this Order: (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and

other documents on behalf of the person or entity with respect to the Acquired Assets; and (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Acquired Assets other than the Assumed Liabilities. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

12. All persons or entities in possession of some or all of the Acquired Assets are directed to surrender possession of such assets to the Buyer or its designee at the time of Closing of the Sale.

13. Following the Closing of the Sale, no holder of any Claim shall interfere with the Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such Claim or based on any actions the Debtors may take in their chapter 11 cases.

14. All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Acquired Assets to the Buyer in accordance with the Kataman Agreement and Order.

### ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS

15. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors' assumption and assignment to the Buyer of the Assumed Contracts identified on Exhibit 2 to this Order and is hereby approved, and all requirements of section 365 of the Bankruptcy Code are hereby determined to have been satisfied with respect to such Assumed Contracts. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall not be liable for any breach of the Assumed Contracts after the date of assignment to the Buyer.

16. The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assumed Contracts to the Buyer free and clear of

all Claims, and to execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Buyer.

17. The Assumed Contracts transferred in accordance with this Order and the Assumption and Assignment Procedures shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in section 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Buyer or the Debtors as a result of the assumption or assignment of the Assumed Contracts. No Assumed Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the transactions contemplated by the Kataman Agreement.

18. Except as set forth in Section 5.13(c) of the Kataman Agreement, the Cure Amounts identified on Exhibit 2 hereto arising under the Assumed Contracts identified on Exhibit 2 hereto shall be paid by the Debtors at the Closing of the Sale, subject to the terms of the Kataman Agreement.

19. Payment of the Cure Amounts shall be in full satisfaction of any and all defaults under the Assumed Contracts, whether monetary or non-monetary. Each pre-Closing (as such term is defined in the Kataman Agreement) nondebtor party to an Assumed Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Debtors or the Buyer, their successors or assigns or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing.

20. The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assumed Contracts.

21. Upon the Closing of the Sale, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts.

22. On _____, 2011 at ____:____ __.m., the Court shall hear all Assignment Objections outstanding and unresolved as of such date and time, if any, including, if unresolved at that time, the Filed Assignment Objections.

### ADDITIONAL PROVISIONS

23. Except as expressly set forth in the Kataman Agreement, the Buyer and its successors or assigns shall have no liability for any liability, claim (as that term is defined in section 101(5) of the Bankruptcy Code), damages or other obligation of or against the Debtors related to the Acquired Assets by reason of the transfer of the Acquired Assets to the Buyer. The Buyer shall not be deemed, as a result of any action taken in connection with the purchase of the Acquired Assets, to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations arising under the Assumed Contracts from and after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.

24. The Kataman Agreement does not provide for the Buyer to acquire claims arising under chapter 5 of the Bankruptcy Code.

25. Notwithstanding that the Debtors' cases are not substantively consolidated, this Order shall have the same effect and binding nature in each of the Debtors' cases as if entered in each case as a separate order.

26. While the Debtors' bankruptcy cases are pending, this Court shall retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Order and the Kataman Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects) and to adjudicate disputes arising under or related to this Order or the Kataman Agreement.

27. Nothing in this Order or the Kataman Agreement releases, nullifies or enjoins the enforcement of any liability to a governmental unit under environmental statutes or regulations (or any associated liabilities for penalties, damages, cost recovery or injunctive relief) that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Notwithstanding the foregoing sentence, nothing in this Order shall be interpreted to deem the Buyer as the successor to the Debtors under any state law successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to entry of this Order or for liabilities relating to off-site disposal of wastes by the Debtors prior to entry of this Order.

28. No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Kataman Agreement, the Motion and this Order.

29. The allocation of Purchase Price contemplated in Section 2.9 of the Kataman Agreement is for tax purposes only and shall not have any impact upon allocation for the purposes of distribution of the proceeds of the Sale.

30. The transactions contemplated by the Kataman Agreement are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the

Sale shall not affect the validity of the Sale to the Buyer, unless such authorization is duly stayed pending such appeal.

31. The terms and provisions of the Kataman Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates and their creditors, the Buyer, and their respective affiliates, successors and assigns, and any affected third parties including all persons asserting Claims in the Acquired Assets to be sold to the Buyer pursuant to the Kataman Agreement, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders or any trustee, examiner or receiver.

32. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order that may be entered confirming any chapter 11 plan of the Debtors, converting the Debtors' cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code or dismissing any of the Debtors' chapter 11 cases.

33. The failure specifically to include any particular provisions of the Kataman Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Kataman Agreement be authorized and approved in its entirety.

34. The Kataman Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Kataman Agreement.

35. In the event that there is a direct conflict between the terms of this Order and the Kataman Agreement, the terms of this Order shall control.

36. Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Kataman Agreement.

37. Notwithstanding the provisions of Rules 6004(h) and 6006(d) of the Bankruptcy Rules, this Order shall not be stayed for 14 days after entry and shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to close the Sale immediately upon entry of this Order.

38. The costs associated with Closing on the Sale, including without limitation any transfer taxes and any fees and expenses payable to the Debtors' investment banker, SSG Capital Advisors, LLC, shall be payable from the gross proceeds of the Sale.

Dated: Wilmington, Delaware
_____, 2011

_____
The Honorable Brendan L. Shannon
United States Bankruptcy Judge