# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HUSSEY COPPER CORP.,[1] | ) Case No. 11-13010 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) Hearing Date: November 9, 2011 @ 2:00 p.m. |
| | ) Obj. Deadline: November 2, 2011 @ 4:00 p.m. |

## APPLICATION OF THE DEBTORS FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF SSG CAPITAL ADVISORS, LLC AS INVESTMENT BANKER TO THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this application ("Application"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code"), for the entry of an order: (i) authorizing the Debtors to employ and retain SSG Capital Advisors, LLC ("SSG") as investment banker to the Debtors, *nunc pro tunc* to the Petition Date (as hereinafter defined); (ii) approving the terms and conditions under which SSG will be retained and compensated; and (iii) granting related relief. In support of this Application, the Debtors rely upon and incorporate by reference the Declaration of J. Scott Victor (the "Victor Declaration"), attached hereto as Exhibit "A." In support of this Application, the Debtors respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Hussey Copper Corp. (9993); Hussey Copper Ltd. (9994); OAP Real Estate, LLC (1298); Cougar Metals, Inc. (1674); Orbie Trading, L.P. (4969); and Hussey Exports Ltd. (8997). The Debtors' address is 100 Washington Street, Leetsdale, Pennsylvania 15056.

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

### Background

4. On September 27, 2011 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases") and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

5. Together with its affiliated Debtors, Hussey Copper Ltd. ("Hussey") is one of the leading manufacturers of copper products in the United States. Among other things, it offers a wide range of value-added copper products and copper-nickel products including sheet, strip, plate and bar, certain alloys, architectural products, tape/fin (used in power cable and heat exchanger products), fabricated products and gaskets. Founded in 1848, Hussey has one manufacturing facility in Leetsdale, Pennsylvania (near Pittsburgh) and two facilities in Eminence, Kentucky. Hussey employs approximately 536 full-time employees.

6. Since late 2008, the overall economic downturn has had an adverse impact on Hussey. As a result of this economic downturn, and due to related fluctuations in the price of copper, Hussey has faced significant economic challenges. Annual revenue for the Debtors, on a consolidated basis, was approximately $453.6 million in the year ending December 31, 2008,

approximately $308.4 million in the year ending December 31, 2009 and approximately $381.9 million in the year ending December 31, 2010. Net income for the last three years was as follows:

| | |
|---|---|
| 2008 : | $3.1 million |
| 2009 : | $1.1 million |
| 2010 : | ($3.0 million) |

7. Hussey is a party to a Revolving Credit, Term Loan and Security Agreement dated as of January 20, 2006 (as amended, the "Credit Facility") with a group of lenders comprised of PNC Bank, National Association, successor to National City Bank and National City Business Credit, Inc. ("PNC"), Wells Fargo Capital Finance, LLC and Bank of America, N.A. (collectively with PNC, the "Bank Group"). In addition to being a member of the Bank Group, PNC serves as issuer and agent for the Bank Group with respect to the Credit Facility.

8. Hussey is the borrower under the Credit Facility. Debtors OAP Real Estate, LLC, Hussey Exports Ltd., Cougar Metals, Inc. and Orbie Trading, L.P. are guarantors (collectively, the "Guarantors").

9. The obligations to the Bank Group under the Credit Facility are secured by liens on substantially all of Hussey's assets.

10. As a result of the occurrence of certain events of default under the Credit Facility related to Hussey's failure to repay the amounts due thereunder as of the maturity date (extended through March 31, 2011), on April 13, 2011 the parties entered into a forbearance agreement, and thereafter a series of amendments to such forbearance agreement. The most recent forbearance agreement amendment, dated September 26, 2011, expired on September 26, 2011. Under the terms of the forbearance agreement, the Bank Group agreed to forbear from exercising its rights and remedies with respect to existing defaults under the Credit Facility, pursuant to

certain terms and conditions, including a reduction of the amount of maximum borrowing available and the requirement that Hussey engage an investment banker to market substantially all of its assets for sale. To that end, Hussey engaged SSG Capital Advisors, LLC ("SSG") as its exclusive investment banker in late April, 2011.

11. In the months leading up to the filing of the Debtors' bankruptcy petitions, the Debtors concurrently pursued two alternative tracks: (a) a sale of substantially all of their assets, with the assistance of SSG, and (b) the satisfaction of the amounts due under the Credit Facility (which, as of the Petition Date, are approximately $38,170,958.24 principal, plus accrued interest) through a refinancing, with the assistance of Huron Consulting Services, LLC. Although the Debtors diligently sought to effectuate a refinancing, it could not be achieved. As a result, the Debtors concluded that the sale of substantially all of their assets, subject to a competitive bidding process, was the best option to maximize value for all creditor constituencies. The Debtors accordingly entered into an Asset Purchase Agreement with KHC Acquisition, LLC prior to the filing of the petitions which, subject to Court approval, will serve as the stalking horse bidder in a competitive bidding process before this Court.

12. In addition to the above-referenced amount owed under the Credit Facility, Hussey is a party to a certain subordinated loan agreement dated as of February 3, 2003 with Square D Company (as amended on January 20, 2006, the "Square D Loan Agreement") in the original principal amount of $5,000,000. The Square D Loan Agreement is secured by a second lien on Hussey's senior assets and is subject to an Intercreditor Agreement with the Bank Group. The obligations owing under the Square D Loan Agreement are guaranteed (subject to certain limitations) by OAP Real Estate, LLC, one of the Debtors herein. As of the Petition Date, the amount owing under the Square D Loan Agreement was approximately $2,400,000. The

Debtors also have approximately $29 million of trade debt, which is owed primarily to suppliers of copper and other metals to Hussey.

13. Additional information regarding Hussey and its affiliated Debtors, and the background to the Debtors' bankruptcy filing, is set forth in the Declaration of Dalton T. Edgecomb in Support of First Day Motions for Relief filed substantially contemporaneously herewith and incorporated herein.

## Relief Requested

14. By this Application, the Debtors seek the entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2016-1, (i) authorizing the employment and retention of SSG as investment banker to the Debtors, *nunc pro tunc* to the Petition Date, (ii) approving the terms and conditions contained in that certain engagement letter among the Debtors and SSG, dated April 29, 2011 and that certain first amended engagement letter dated September 25, 2011 (together, the "Engagement Agreement") under which SSG will be retained and compensated at the expense of the Debtors' estate, and (iii) granting related relief. A copy of the Engagement Agreement is attached hereto as Exhibit "B."

## Basis for Relief Requested

15. Under section 327 of the Bankruptcy Code, a debtor in possession may employ one or more professionals, that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist the debtor in possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

16. Section 328 of the Bankruptcy Code further provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms

and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

17. Bankruptcy Rule 2014(a) sets forth the requirements for retention applications and provides that such applications must include:

> specific facts showing the necessity for the employment, the name of the [company] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [company's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

18. By this Application, the Debtors request that the Court approve the employment and compensation arrangements described in the Engagement Agreement pursuant to section 328(a) of the Bankruptcy Code. Indeed, the employment arrangements contained in the Engagement Agreement are beneficial to the Debtors' estates and the compensation arrangements provide certainty and proper inducement for SSG to act expeditiously and prudently with respect to the matters for which it will be employed.

19. The Debtors further request approval of the employment of SSG *nunc pro tunc* to the Petition Date. Such relief is warranted by the circumstances presented by these Chapter 11 Cases. The United States Court of Appeals for the Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986). The complexity and speed that have characterized these Chapter 11 Cases have necessitated that the Debtors, SSG and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly

devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

### Necessity

20. The Debtors engaged SSG as their investment banker to assist the Debtors with the sale of all or substantially all of the assets of the Debtors (a "Sale Transaction"). As defined in the Engagement Agreement, a Sale Transaction means and includes any transaction involving the sale or transfer of all or a significant portion of the assets of Hussey Copper or any other extraordinary corporate transaction involving the company. The Debtors submit that a successful Sale Transaction is the best way to maximize the value of the Debtors' estates.

### SSG's Qualifications

21. The Debtors chose SSG to act as the Debtors' investment banker because SSG is a leading independent investment banking firm specializing in the completion of challenging financial transactions. SSG has (i) extensive knowledge of potential strategic and financial buyers interested in the Debtors' industry; (ii) substantial special situation sell-side investment banking experience; and (iii) extensive restructuring experience. SSG has served as an investment banker for debtors and other parties in a number of bankruptcy cases in the Third Circuit, including, *inter alia*: *In re PCAA Parent, LLC, et al.*, Case No. 10-10250 (MFW) (Bankr. D. Del. February 17, 2010); *In re Philadelphia Newspapers, LLC*, Case No. 09-11204 (SR) (Bankr. E.D. Pa. June 18, 2010); *In re Trade Secret, Inc.*, Case No. 10-12153 (KG) (Bankr. D. Del. August 4, 2010); *In re Townsends, Inc.*, Case No. 10-14096 (CSS) (Bankr. D. Del. January 13, 2011); *In re Wolverine Tube, Inc., et al.*, Case No. 10-13522 (PJW) (Bankr. D. Del. April 15, 2011); *Lower Bucks Hospital*, Case No. 10-10239 (ELF) (Bankr. E.D. Pa. Feb. 12, 2010); *Big 10 Tires Stores, Inc.*, Case No. 09-11176 (CSS) (Bankr. D. Del. April 2, 2009); *Ritz Camera*, Case No. 09-10617 (MFW) (Bankr. D. Del. February 22, 2009); *Diamond Glass, Inc.*,

Case No. 08-10601 (CSS) (Bankr. D. Del. April 1, 2008); *Boscov's Inc.*, Case No. 08-11635 (KG) (Bankr. D. Del. Aug. 8, 2008); *Zestra Laboratories, Inc.*, Case No. 08-11313 (KJC) (Bankr. D. Del. June 29, 2008); *Shapes/Arch Holding LLC*, Case No. 08-14631 (GMB) (Bankr. D.N.J. March 16, 2008); *Marcal Paper Mills, Inc.*, Case No. 06-21886 (MS) (Bankr. D.N.J. November 30, 2006); *Nobex Corp.*, Case No. 05-20040 (CSS) (Bankr. D. Del. Dec. 1, 2005); *Pharmaceutical Formulations, Inc.*, Case No. 05-11910 (MFW) (Bankr. D. Del. July 11, 2005); *The Glass Group, Inc.*, Case No. 05-10532 (KG) (Bankr. D. Del. Feb. 28, 2005); *American Business Financial Services, Inc.*, Case No. 05-10203 (MFW) (Bankr. D. Del. Jan. 21, 2005); and *Coram Healthcare Corp.*, Case No. 00-03299 (MFW) (Bankr. D. Del. August 8, 2000). As a result, the Debtors believe that SSG is well qualified to perform these services and represent the Debtors' interests in these Chapter 11 Cases.

### SSG's Disinterestedness

22. To the best of the Debtors' knowledge, information and belief, and based entirely and in reliance upon the Victor Declaration: (a) SSG is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, and holds no interest materially adverse to the Debtors, their creditors and shareholders for the matters for which SSG is to be employed; and (b) SSG has no connection to the Debtors, their creditors, shareholders or related parties herein except as disclosed in the Victor Declaration. Moreover, the retention and employment of SSG is necessary and in the best interests of the Debtors, their estates, creditors and equity interest holders.

23. Furthermore, to the best of the Debtors' knowledge, information and belief, and based entirely and in reliance upon the Victor Declaration, none of SSG's past or current engagements would or do appear to create an interest materially adverse to the interests of the Debtors, creditors or equity security holders in these Chapter 11 Cases. As such, the Debtors

believe that SSG is disinterested and holds no materially adverse interest as to the matters upon which they are to be retained. To the extent that SSG discovers any facts bearing on the matters described herein during the period of SSG's retention, they will supplement the information contained in the Victor Declaration.

### Scope of Services

24. The parties have entered into the Engagement Agreement, which governs the relationship between SSG and the Debtors. The terms and conditions of the Engagement Agreement were heavily negotiated, and reflect the parties' mutual agreement as to the substantial efforts and resources that will be required in this engagement. Under the Engagement Agreement, the Debtors have requested that SSG serve as investment banker during these Chapter 11 Cases to perform a broad range of services (the "Services") on behalf of the Debtors. These Services include the following:

Sale

a. Prepare an information memorandum describing, *inter alia*, (i) the Debtors; (ii) the Debtors' historical performance and prospects; (iii) the Debtors' operations, manufacturing facilities, marketing and sales, inventory, employees and management; and (iv) anticipated financial results of the Debtors;

b. Assist the Debtors in developing a list of potential buyers who will be contacted to determine interest in acquiring substantially all of the assets and operations of the Debtors;

c. Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum and review the compilation of information to be supplied in an electronic data room;

d. Assist the Debtors in populating the electronic data room and in coordinating site visits for interested buyers;

e. Solicit competitive offers from potential buyers;

f. Advise and assist the Debtors in structuring the sale transaction and negotiating the sale transaction;

g. Assist the Debtors, its attorneys and financial advisor with bid procedures, the sale process, auction, all court hearings and provide expert testimony as requested by the Debtors;

h. Otherwise assist the Debtors, its board of directors, management and professionals throughout the chapter 11 process and through closing of the sale transaction;

i. Such Services as the Debtors may reasonably and specifically request.

Financing

j. Advise the Debtors with respect to all aspects of raising debt and/or equity capital (the "Financing"), including timing, structure and terms;

k. Conduct due diligence, complete and executive summary and prepare a financing memorandum describing, *inter alia*, (i) the Debtors, (ii) the Debtors' historical performance and prospects; (iii) the Debtors' operations, manufacturing facilities, marketing and sales, inventory, employees and management; and (iv) anticipated financial results of the Debtors;

l. Approach potential lenders and investors, solicit terms sheets from those lenders and investors interested in the Financing and negotiate with lenders and investors regarding the terms and structure of the Financing;

m. Otherwise assist the Debtors, its attorneys and accountants, as necessary, through closing; and

Restructuring

n. Assist the Debtors, on a best efforts basis, in any negotiation with various stakeholders in the Debtors regarding a potential restructuring of existing claims and equity.

25. It is necessary that the Debtors employ SSG to render the foregoing Services. The Debtors believe that the services will not duplicate the services that other professionals will be providing the Debtors in these Chapter 11 Cases. Specifically, SSG will carry out a unique function and will use reasonable efforts to coordinate the Debtors and other professionals retained in these Chapter 11 Cases to avoid unnecessary duplication of services.

## Compensation

26. As set forth with greater specificity in the Engagement Agreement, the Debtors and SSG have agreed to the following terms of compensation:

   a. Fees: An initial fee of $50,000, which was received upon the execution of the original Engagement Agreement and which shall not be credited against the Transaction Fee.

   b. Monthly Fee: Monthly fees of $50,000 per month beginning June 1, 2011 and payable on the 1st day of each month thereafter. SSG will credit fifty percent (50%) of the monthly fees against the Transaction Fee.

   c. Sale Fee: Upon the consummation of the Sale Transaction, the Debtors shall pay SSG a fee equal to 1.5% of the Total Consideration (as defined in the Engagement Agreement) up to $100 million plus 2.5% of Total Consideration between $100 million and $140 million plus 3.0% of Total Consideration in excess of $140 million. The Sale Fee shall be paid directly from the gross proceeds of any Sale as a cost of Sale.

   d. Financing Fee: Upon the first closing of a Financing with any financing source, the Debtors shall pay SSG a fee equal to 1.5% of any Senior Debt (as defined in the Engagement Agreement) raised from any financing source, plus 3.0% of any Tranche B/Secured Subordinated Debt or any Traditional Subordinated Debt (as defined in the Engagement Agreement raised, plus 6% of any Traditional Equity raised. SSG also has the ability to receive an additional Financing Fee if certain conditions are met. The Financing Fee shall be paid directly from the gross proceeds of any Financing as a cost of Financing.

   e. Restructuring Fee: Upon the closing of a Restructuring Transaction (as defined in the Engagement Letter), either out of court or through a confirmed chapter 11 plan of reorganization, Hussey shall pay SSG a fee equal to $750,000.

   f. Expenses: In addition to the foregoing fees, Debtors shall reimburse SSG for all of SSG's reasonable, out-of-pocket expenses incurred in connection with the engagement.

27. As set forth in the Victor Declaration, the compensation structure described in the Engagement Agreement is reasonable and SSG believes it is comparable to those generally charged by investment banking and financial advisory firms of similar stature to SSG for comparable engagements, both in and out of court.

28. The hours worked, the results achieved and the ultimate benefit to the Debtors of the work performed by SSG in connection with this engagement may vary and the Debtors and SSG have taken this into account in setting the above fees. In order to induce SSG to do business with the Debtors in bankruptcy, the fees were set against the difficulty of the assignment and the potential for failure.

29. In addition, given the numerous issues that SSG may be required to address in performance of the services hereunder, SSG's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for SSG's services for engagements of this nature in an out-of-court context, the Debtors believe that the fee arrangements set forth in the Engagement Agreement are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

### Indemnification Provision

30. As set forth more fully in, and pursuant to the terms set forth within, the Engagement Agreement and Attachment A to the Engagement Agreement, the Debtors acknowledge and agree to indemnify SSG. The Debtors will not be responsible for indemnifying SSG for any liability to the extent such liability is found in a final judgment by a court of competent jurisdiction to have resulted primarily from SSG's gross negligence or willful misconduct in the performance of its duties under the Engagement Agreement.

### Notice

31. Notice of this Motion has been given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Office of the United States Attorney for the District of Delaware; (c) the Offices of the United States Attorney for the Commonwealth of Pennsylvania; (d) the Offices of the United States Attorney for the Commonwealth of Kentucky; (e) the Office of the Attorney General for the State of Delaware; (f) the Office of the Attorney

General for the Commonwealth of Pennsylvania; (g) the Office of the Attorney General for the Commonwealth of Kentucky; (h) the State of Delaware Department of Labor and Industry; (i) the Commonwealth of Pennsylvania Department of Labor and Industry; (j) the Commonwealth of Kentucky Department of Labor and Industry; (k) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed by the Debtors pursuant to Bankruptcy Rule 1007(d); (l) counsel to PNC Bank, National Association, as lender, issuer and agent for the Debtors' pre-petition and post-petition secured lenders; (m) counsel to Schneider Electric USA, Inc.; (n) the Internal Revenue Service; (o) counsel to the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (United Steelworkers, AFL-CIO); (p) the Pension Benefit Guaranty Corporation; and (q) counsel to KHC Acquisition, LLC. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

32. No prior application for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an Order: (i) authorizing the Debtors to retain and employ SSG as investment banker to the Debtors, *nunc pro tunc* to the Petition Date; (ii) approving the terms and conditions contained in the Engagement Agreement; and (iii) granting such other relief as is just and proper.

Dated: October 4, 2011

HUSSEY COPPER CORPORATION

By: /s/ Dalton T. Edgecomb
Name: Dalton T. Edgecomb
Title: Chief Restructuring Officer